# PHILLIPS SHEET AND TIN PLATE COMPANY
## *vs.*
## W. W. BOYER & COMPANY.

*Purchase of goods: monthly deliveries; as per specifications; waiver; breach; damages under Uniform Sales Act.*

Where a contract for the purchase of goods provides that delivery should be in approximately equal monthly quantities, and that specifications will be given at least sixty days in advance of shipping dates, the purchaser can not refuse to furnish the specifications and then recover damages, unless the seller should have waived his right to the specifications.

p. 122

Whether there was such a waiver is a question for the Court, and not for the jury, when what is claimed as a waiver is admitted, and not denied.                                   p. 129

A prayer which does not point out to the jury what facts would justify the finding of a waiver, is erroneous, and is not saved by the fact that actually there was no waiver.   p. 132

On a breach of contract to deliver goods, the measure of damages under the Uniform Sales Act is the difference between the contract price and the market price of the goods at the time of the refusal of the delivery, where there are no special circumstances showing proximate damages of a greater amount and no fixed time for the delivery when the refusal of delivery took place.                                         p. 133

*Decided June 20th, 1918.*

Appeal from the Superior Court of Baltimore City. (STANTON, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Clarence A. Tucker* and *Joseph N. Ulman* (with a brief by *Knapp. Ulman & Tucker*), for the appellant.

*Joseph C. France* and *Leigh Bonsal,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellees sued the appellant on a contract dated Dec. 3rd, 1915, by which the appellant agreed to sell and the appellees agreed to buy 5,000 base boxes of tin plate, of which the appellant only delivered 2,923 boxes and refused to deliver 2,077 boxes. A verdict for $2,849.38 was obtained by the appellees, and this appeal is from the judgment entered thereon. There are thirty-four bills of exception in the record—the last one embracing the rulings on the prayers, three of which were granted for the plaintiffs and thirteen offered by the defendant were rejected, and its special exceptions to each of those prayers of the plaintiffs were overruled. The provisions of the contract particularly involved in this appeal are the following:

"Time of Delivery—In approximately equal monthly quantities; each month's delivery to be treated and considered as a separate contract during the year 1916. Specifications—To be given at least 60 days in advance of shipping date."

The price named was "$3.50 f. o. b. mill." The appellant is a manufacturer—having its general office and one of its rolling mills at Weirton, W. Va., and it had a selling agency in Philadelphia, under the management of H. M. Davis, who was in the habit of taking the orders personally from the appellees, who are makers of tin cans and packers of canned goods in Baltimore. The parties had been dealing with each other for about five years.

Edmund C. White, a member of the firm of W. W. Boyer & Co., appellees, was the first witness called. While he was on the stand the plaintiffs offered in evidence a letter to them dated December 14, 1915, signed in the name of the appel-

lant by H. M. Davis, another dated January 11, 1916, signed in the same way, one of March 3, 1916, from the appellees to the company, at Weirton, W. Va., and then one from the appellant, by George Mendell, "Manager Order Dept.," dated March 6, 1916. The first exception was to permitting the witness to state why he did not make any reply to the letter last referred to. He said, "I didn't see any necessity of replying." And the second was to the question, "They offered you deliveries in August?," to which he replied: "We couldn't wait until August and September for the plate. We needed the plate before that." Without now setting out those letters, it is sufficient to say there was no reversible error in either of those exceptions.

The theory of the appellant is that if there was any breach of the contract on its part, it was on April 19, 1916, as shown by a letter of that date, and that hence the letters referred to in the bills of exception from the third to the twenty-ninth, inclusive, all of which were after April 19th, were irrelevant, immaterial or calculated to mislead the jury. We can not undertake to discuss all of them separately, and we will now only say that inasmuch as the appellees claim that the appellant waived the provision in the contract as to furnishing specifications, upon which the appellant relies for its right to refuse to furnish the 2,077 boxes, or is estopped to set up that defense, some of those letters were material and relevant, and we would hesitate to reverse the judgment for error, if any, in admitting the others. No reversible error appears in the rulings in the 30th, 31st and 32nd exceptions, as we can not see how any injury could have been done by those rulings, especially when the answers to the 30th and 32nd are considered. The thirty-third can be more conveniently considered in connection with the prayers.

The language in the contract which we have quoted above would seem to clearly indicate that the parties intended that the 5,000 boxes of tin plate should be delivered in instalments "in approximately equal monthly quantities" during the year 1916, and that specifications should be furnished the seller

122   PHILLIPS S. & T. P. CO vs. BOYER & CO.

Opinion of the Court.                    [133

by the buyer "at least sixty days in advance of shipping date" fixed by the purchasers. Although the specifications could not have been given in time for shipments in January, as the contract was not made until December 3, 1915, they could have been given in time for an early shipment in February, and have been continued until the end of the year. It was not intended that those for each shipment should be precisely for the same proportion of the 5,000 boxes, as the contract was "in approximately equal monthly quantities," and it would have been impracticable, if not impossible, to make said shipments in precisely the same amount, but the shipments could have been made to comply with the spirit of the contract by adding something like the eleventh part of a month's supply to each month's specifications. There can be found no possible justification in the contract itself for the purchasers refusing to furnish specifications until they saw proper to do so, and then sue for damages for refusal to furnish the boxes that were to be delivered in the early part of the year. If they could do so for four or five months, why not wait until the last sixty days and require the seller to furnish all at once? The provisions of the contract in reference to "time of delivery" and "specifications" would be rendered useless if that could be done—particularly that part which said "in approximately equal monthly quantities."

The question, then, is whether the seller waived those provisions, or is estopped from relying on them. While the contract is dated December 3rd, the record shows that the seller in a letter of December 4th enclosed two copies of it to be signed by the purchasers, one copy to be retained by the latter and the other to be returned to the seller. On December 14th the seller wrote to the purchaser:

"Owing to the unprecedented demand for tin plate which has caused a congestion at the mill such as has never heretofore existed, we would suggest and try to impress upon you the necessity of letting us have specifications now, against your contract, for whatever material you will require for shipment during Feb-

ruary and March. We are bringing this to your attention *now* for several reasons: First: You know there is a clause in the contract to the effect that specifications must be furnished sixty days prior to time of shipment desired. Second: Specifications are placed on the mill in the order received. Third: If you delay, you may be disappointed in getting the material when you want it. We will exert ourselves to the utmost to take care of your requirements if you will assist us to the extent of giving us specifications sixty days in advance of shipping date. Sincerely trusting that we may have your co-operation during 1916, we are, Very truly yours."

No reply was made to that, and the seller on January 11th, 1916, wrote as follows:

"We again beg to advise you that the steel and tin plate situation has reached such an acute stage, owing to the unprecedented demand upon all mills, it will be to your interest to specify for as remote delivery as you can possibly estimate your requirements. Specifications have already come to us in such volume that all of our mills will be taxed to capacity for several weeks, and if you do not specify promptly, we fear you will be sorely disappointed by not having plate at the time you will require it."

No notice was taken of that until March 3rd, seven weeks, when the purchasers wrote to the seller:

"Will you please advise us promptly the earliest date you can make shipment of tin plates we may be able to specify within the next week or two?"

In reply to that the seller wrote on March 6th:

"Replying to yours of March 3rd, would advise that on specifications we are receiving today our promise of delivery is for forwarding late August or early September, and we could make this delivery if specifications were mailed to us promptly. Conditions are

changing rapidly, and if you desire shipment made in
accordance with above we should have advice by return
mail."

No reply was made to that, and a member of the firm of
W. W. Boyer & Co. testified that they did not reply to it for
reasons stated above. It will be remembered, however, that
they had not yet furnished *any* specifications, and even if the
seller was to be held strictly to the terms of the contract, if
the appellees had furnished the specifications within the week
or two after their letter of March 3rd, as the inquiry sug-
gested, they could not have required the seller to furnish the
boxes until sometime after sixty days which would have run
into May. On March 10th the seller wrote as follows:

"Referring to your contract No. 1352 we again wish
to call your attention to the abnormal demand for tin
plate and that at the present time our mills are prom-
ising deliveries on new specifications some time late
August or early September. If it is your intention to
specify against your contract for delivery during that
period, we would suggest that you do so without fur-
ther delay. Trusting that you will give this matter
prompt attention, we are," etc.

On March 11th the purchasers replied:

"Your favor of the 10th inst. received with refer-
ence to our sending you specifications on contract No.
1352, and we carefully note contents. This matter is
now having our attention, and we hope to be able to
send you some specifications at an early date."

Notwithstanding what was said in that letter, written over
three months after the contract was made, the purchasers did
not send specifications, and the seller wrote on April 19th
the following letter:

"Referring once more, if you please, to your con-
tract (our number 1352) which calls for 5,000 boxes
tin plate to be specified for in approximately equal
monthly quantities, sixty days in advance of shipping

dates, we beg to call your attention to the fact that according to the terms of the contract you have forfeited five months' quota on account of your failure to specify, thus leaving a balance of but 2,920 base boxes to which you are entitled for shipment during the balance of the year beginning with the month of June, provided we have specifications for the June quota prior to May 1st."

That was sent by H. M. Davis from the Philadelphia office. It seems to have brought some life into the purchasers with reference to the contract and from that time on they became the aggressive parties. The next day, April 20th, they replied:

"Your letter of the 19th received signed H. M. Davis, initialed M., and contents noted. The letter we take it is a general communication and not intended to apply to us, as we have never been required by yourselves or any other maker of tin plate to take our plate out in equal monthly instalments. We have been given by you and others the entire year to take out our contracts, and the present year has not been made any exception.

"We wrote Weirton as early as March 3rd asking how soon you could make delivery of specifications to be sent the next few days. Mr. Mendell wrote us under date of March 6th that your promise of delivery was for forwarding late August or early September, about six months' delivery. This was too far off, and we had to specify where we could get earlier delivery, fifteen weeks to four months. We then decided to take our contract with you in the last quarter, and if you desire us to give specifications for the 5,000 boxes in the next few days we will do so, although it would suit us better to specify somewhat later."

The concluding paragraph shows how dangerous it is to depart from at least the spirit, to say nothing of the letter of a contract—"*We then decided* to take our contract with you

in the last quarter," etc.—and although they say they then decided to do that, they did not seem to think it incumbent on them to even inform the seller of their decision.  It was not until the notice of a forfeiture that they were moved to announce their decision.  Although they said that the provision of delivery in late August or early September, made in the seller's letter of March 6th, was too far off, and they decided "to take our contract with you in the last quarter," and said "if you desire us to give specifications for the 5,000 boxes in the next few days we will do so, although it would suit us better to specify somewhat later."  On April 28th they wrote to enter their specifications on account of the contract for 1,870 packages, which counsel for the plaintiffs said, as stated in the record, "are equivalent to 2,923 base boxes." Those specifications were for delivery June 30th, July 30th, August 30th, September 15th, October 1st and November 30th.  By understanding of counsel announced at the trial no point was made as to the three boxes, and the letter was treated as being a specification for 2,920 base boxes, which is the number the seller claimed was all it was bound to deliver, as shown by the letter of April 19th declaring the forfeiture for previous months.  A letter from the seller dated April 28th—being of the same date as the specifications and the two probably having crossed in the mails—referred to the letter of Mr. Davis of April, 19th, ratified the latter and concluded as follows:

"The demand for tin plate during this year has been and continues to be enormous, and while in former years, in the absence of such a condition, contracts were treated with more or less leniency, such treatment is out of the question now, for our friends must live up strictly to their contracts, if we are to have any chance at all of performing our part of the obligation.  The manufacturers from whom we purchase our raw material allow us absolutely no leeway whatever, and we must perforce take the same position with our customers."

Even then no specifications were furnished for the 2,077 boxes until the letter of October 27th, which the appellees claim were such, but they did furnish them for the 2,920 (2,923, as explained above) boxes which the seller notified them were all they were required to furnish.

On May 4th the purchasers wrote that they had that day wired the seller about an acknowledgment of the specifications (which were dated April 28th) and acknowledged receipt of a telegram that it was mailed. That was dated May 2nd, the dates above referred to were placed under a heading of "Shipments requested," and on it was a statement "Shipment Promised Start shipment late August." On July 25th the purchasers wrote the seller "We understand you expect to ship the June 30th and July 30th portions latter part of August," and the seller replied, on July 27th: "We regret we will not be able to commence shipping against this specification until the early part of October." The purchasers replied that the letter was a surprise to them, but said they would help them by waiting until October 1st for all therein specified excepting those of August 30th and September 15th, which they said they would have to have by all means. That was met by a letter of August 2nd in which it was said it would be impossible to prepare any of the material for forwarding earlier than October. A number of letters passed between them and the purchasers were urging the seller to furnish them some of the items earlier, but on September 27th the seller wrote they would be unable to furnish any until during the month of November. Several letters then appear in the record which, to speak mildly, do not reflect credit upon the seller. No one can read the letters without being convinced that the seller declared a forfeiture because tin plate had advanced, but the question is not their reason for declaring a forfeiture but their right to do so, and on the other hand, it is equally apparent that the difference in the positions taken by the purchasers in the latter part of the year from their action in the early part of 1916 was owing to that rise in price. If the market had declined below the

contract price, it is clear that the appellees would not have insisted upon, and could not have been held for the 2,077 boxes after the letter of April 19th.   In a letter from the purchasers to the seller of October 27th, 1916, most of which has no relevancy to this case, as it simply gives Mr. White's version of their former dealings, which the seller had referred to in justification of its position in insisting upon a forfeiture, the concluding paragraph is claimed to furnish specifications for the 2,077 base boxes not delivered.   It is:

> "We are still of the opinion that your better nature and real self will see that you are all wrong in the position you have taken, and we confidently expect to receive from you 2,077 base boxes to complete specifications on our contract No. 1352, which you may ship us December 29th or 30th, more than 60 days from now, in 1,038 packages of 20x28 90-lb. plates Bessemer Plates or open hearth plates, whichever is most convenient to you."

But the forfeiture had been declared long before that, and while a great deal of correspondence passed between the parties—the purchasers trying to persuade the seller to furnish the other boxes, and the parties giving their respective reasons for their positions—the seller declined to furnish them. The letter of October 27th wholly ignores the provision "in approximately equal monthly quantities," and seemed to be on the theory that their decision, announced in their letter of April 20th, "to take our contract with you in the last quarter" was binding on the appellant, which it clearly was not.

We have thus set out the facts, being almost wholly shown by the correspondence, at great length, and there can be no doubt that the failure of the appellees to comply with the terms of the contract as to furnishing specifications would preclude a recovery by them unless waived by the appellant, or it is estopped from setting up the defense.   Unless there was such waiver or estoppel the appellant in our judgment was clearly authorized to declare a forfeiture for so much as was covered by the default of the appellees.   After briefly

referring to some of the authorities we will consider the question of waiver and estoppel as raised by the prayers. Under our decisions it is for the Court, and not the jury, to determine whether there has been a waiver when what is claimed to constitute a waiver is admitted or not denied. *Spring Garden Mut. Ins. Co.* v. *Evans,* 9 Md. 1; *Walter v. Bloede & Co.,* 94 Md. 80; *Miller* v. *Mantik,* 116 Md. 279. Although when "the alleged waiver is to be inferred from facts and circumstances resting entirely on parol evidence, the question of waiver *vel non* is one for the jury under instruction from the Court, indicating to them the portions of the evidence from which they may infer the waiver, but it is erroneous in such cases to leave to the jury the broad question whether there was a waiver without any indication of what facts they must find from the evidence in order to infer the waiver." *Penlz* v. *Penn. Fire Ins. Co.,* 92 Md. 444, quoted in full in *Sumwalt Co.* v. *Knickerbocker Co.,* 112 Md. 437.

In this case all that occurred between the parties prior to April 19, 1916, the date of the alleged forfeiture, is to be found in the letters which we have set out in full. It is admitted that up to that time there had been no conversations between the agents or representatives of the respective parties. It is true that there had been dealings between them in former years, in which the appellees claim that the appellant did not require strict compliance with the terms of the contract in reference to delivery and specifications, but without regard to how far the terms of those contracts were similar to those in this, it seems clear to us that the appellees had no right to assume that such leniency would be extended under this contract. The letter of December 14, 1915, from the appellant informed them, if they did not know it before, that the conditions were wholly different from what they had been, and it called the appellees' special attention to the clause in reference to the specifications. That letter was written about ten days after the contract was executed. It is contended that the expression "If you delay, you may be dis-

appointed in getting the material when you want it" was an intimation that any default on the part of the appellees would simply result in delay and not in a forfeiture, but that construction was not justified under the existing conditions of business referred to in the early part of the letter. The specifications were required to be furnished *"at least* 60 days in advance of shipping date," and hence could under the contract be given more than sixty days in advance of the time the tin plate was wanted by the appellees. It would not have been a violation of the contract to give the notice in December for the material to be furnished in March, or later. The necessity for specifications is admitted by Mr. White, one of the appellees. He said that he knew that manufacturers of sheet tin had to purchase their sheet bars of steel ahead of time, so as to prepare for the particular sizes and weights they were to roll; that they "order in tons and then they specify any particular size of sheet bars and that is why they want sixty days' notice, so they can specify their tonnage and get the size bars they want." The provision for the specifications is, therefore, a very material part of the contract, and although when business is dull the manufacturer can afford to be lenient, and can perhaps get his orders for material promptly filled so as to enable him to supply his customers, even on less than sixty days' notice, it must be apparent to every one that that can not be expected when, as the letter stated, there is an "unprecedented demand for tin plate which has caused a congestion at the mills such as has never heretofore existed." That failed to move the appellees and the appellant sent the letter of January 11, 1916. That was not a waiver—on the contrary it was a strong suggestion for speedy specifications "for as remote delivery as you can possibly estimate your requirements." What was said in *Sumwalt Co.* v. *Knickerbocker Co.,* 112 Md., at page 447, about the third prayer is very applicable to the request made by the appellant for remote delivery. It is difficult to understand how that letter could have been thought to be a waiver of specifications, but it brought no response until March 3rd, nearly two months,

and the appellees had failed to furnish any specifications during December, January or February—although warned on December 14th of the great demand for tin plate. Then when the appellant replied on March 6th that on specifications they were then receiving they promised deliveries in late August or early September, and said it would do that for them if the specifications were mailed promptly, and again on March 10th urged the specifications to be furnished if they wanted deliveries in August or September, nothing moved the appellees until the notice of forfeiture by the letter of April 19th. The appellees undertake to justify their unbusinesslike conduct of not even replying by saying that the times for deliveries proposed by the appellant were too far off to answer their purposes. What did they expect the appellant to do? Was it to remain idle, and not take any orders until the appellees furnished specifications? As they not only did not furnish them at the times the contract clearly contemplated, that is to say monthly, and even ignored the urgency of the appellant, although they said in their letter of March 3rd that they might "be able to specify within the next week or two" but did not furnish any specifications until April 28th, which was after the forfeiture of the 2,080 boxes, the appellant had the right to contract with others and not wait until the appellees chose to furnish them.

Under the above authorities plaintiffs' "D. Prayer" was erroneously granted, because it was for the Court to determine under the circumstances of this case whether there had been a waiver of the provision as to furnishing specifications, but even if it had been a question for the jury, it was necessary to point out in the prayer what facts "they must find from the evidence in order to infer the waiver." We can not agree with the appellees that there was a waiver, and that hence there was no reversible error. From what we have said it will be seen that in our judgment there was no such waiver. The suit is not to recover damages for not furnishing the 2923 boxes according to contract, and hence whether

the defendant was unable to make prompt deliveries of them is not material. The appellees accepted them when they were delivered, and there is no evidence to show that they suffered any loss by not getting them when they should have been delivered. On the contrary, as the price was rising, they perhaps gained by the delays of the appellant, but whether that be so or not, if the appellant was liable for a breach in reference to those boxes, the appellees did not seek to recover for such breach in this case. If the appellees had complied with the evident meaning of the contract, and had furnished the specifications in the early part of the year, it may be that the appellant would have been prepared to furnish all with reasonable promptness, but the conduct of the appellees was calculated to leave the appellant in doubt, up to April 19th, 1916, whether they would furnish any specifications, or carry out their part of the contract.

Nor do we think that the appellant was estopped to claim a forfeiture, as asserted in its letter of April 19, 1916, of the instalments deliverable during the early part of that year—for which specifications should have been furnished by that time, and hence plaintiffs' "E Prayer" should not have been granted. From what we have said, it follows that the plaintiffs' "F. Prayer" was also erroneous. The verdict of the jury shows that it allowed damages for the 2,077 boxes and interest, which it could well do under that prayer, but it ought to have been limited to such damages as the plaintiffs sustained for so much of the one-eleventh of the whole number of boxes contracted for as had not been furnished. As the appellees could not furnish the specifications in time for January deliveries, under the terms of the contract, the appellant could only forfeit four months on April 19, 1916, but we will speak of the measure of damages later.

The first, second, third and three and a half prayers of the defendant were properly rejected, as the plaintiffs were entitled to recover something. Without discussing all of the other prayers of the defendant, its eighth and tenth seem to

us to be about correct. The theory on which they were drawn is correct, but we will not stop to calculate the precise sums. As the contract was limited to the year 1916, and specifications could not be given sixty days in advance for January, and deliveries were to be "in approximately equal monthly quantities," there should have been about 454½ boxes per month (one-eleventh of the 5,000) and the four months for which there was a forfeiture made about 1818, the quota for the months of February, March, April and May, being the amount named in the eighth prayer. The defendant, however, did deliver 2,923, while for the seven months left to the end of the year the appellees were entitled to about 3,181½ boxes—leaving 258½, or 259 as the defendant's tenth prayer states. As the exact number per month was 454 6/11 instead of 454½ the 259 was approximately correct, and therefore we think those prayers were substantially right.

The measure of damages under the Uniform Sales Act (Art. 83, sec. 88 of the Code) we think should have been "the difference between the contract price and the market or current price of the goods * * * at the time of the refusal to deliver"—there being no special circumstances showing proximate damages of a greater amount and there being no time fixed for the delivery when the refusal to deliver took place. There was, therefore, error in the 33rd exception in not granting the motion of the defendant to strike out the evidence of Mr. Thompson and so much of Exhibit No. 42 referred to and incorporated therein as purports to give the market price of tin plate subsequent to the month of April, 1916—that evidence having been admitted subject to exceptions.

It follows that the judgment must be reversed.

*Judgment reversed and new trial awarded, the appellee to pay the costs.*