# BEAM MOTOR CAR COMPANY

*vs.*

## WM. H. NARER ET AL.

*Contract of Sale—Rescission—Breach of Subsidiary Promise— Recovery of Payment—Remand by Appellate Court.*

Where a written contract for the purchase of an automobile stipulated that "no agreement, verbal or otherwise, not embodied herein, will be recognized as binding," the purchaser could not assert the breach by the seller of a collateral verbal contract to make an allowance for an old car, as a ground for rescission of the contract.　　　　　　　　　pp. 190, 191

One cannot rescind a contract by reason of a breach by the other party of a subsidiary promise therein, the breach not going to the root of the matter, so as to defeat the object of the contract, and being capable of compensation by damages.
　　　　　　　　　　　　　　　　　　p. 191

After assigning his interest in a contract, one cannot, without the consent of the assignee, rescind the contract.　　p. 192

One cannot, under the common counts, recover payments made by him under a contract to which he is a party, if he has no right to rescind the contract, and it has not been rescinded by the other party thereto.　　　　　　　　　　　　p. 192

No ground appearing to the Court of Appeals, on reversing a judgment for plaintiff, to justify a recovery by him, *held* that the court would not remand the case for a new trial, but, on the possibility that some ground of recovery had been overlooked, it would entertain an application to remand the case if made within thirty days from the filing of the opinion.　　p. 193

*Decided June 21st, 1922.*

Appeal from the Superior Court of Baltimore City (GORTER, C. J.).

Action by William H. Narer and Katherine E. Narer against the Beam Motor Car Company and Allen W. Beam, Junior. From a judgment for plaintiffs against defendant motor car company, it appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, and OFFUTT, JJ.

*Raphael Walter,* with whom were *Gill, Walter, Murray & Greene* on the brief, for the appellant.

*Karl F. Steinman,* with whom were *Carroll & Steinman* on the brief, for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a judgment obtained by the appellees, who were plaintiffs below, against the appellant. That company and Allen W. Beam, Jr., were defendants, but, by an instruction of the lower court, a verdict was rendered for Mr. Beam. The declaration contains the common counts, and the defendants filed the two general issue pleas. William H. Narer purchased of the Beam Motor Car company a sedan car for $5,975, on which he paid $1,000, and was allowed $1,025 for a Ford car. He also paid $121 on account of insurance. He was not satisfied with the sedan car, and, after some negotiations between them, the company agreed to take back the sedan and sell him an open car. Mr. Narer testified that Mr. Beam told him they would not allow him for the Ford car, and he replied that if that was the case he would not take any, as he did not want two cars, and Mr. Beam then said that if he (Beam) did not sell the Ford car in two weeks, he would allow him $300 for the Ford car. The agreement to allow him the $300 is not admitted, but Narer signed an order for a Premier motor car on May 11, 1920, which in part was as follows:

"Style of car, 7 passenger Blue Touring
    Standard Catalogue Equipment unless
    otherwise noted.
"Price of car f. o. b. factory...............$4,600.00
"Freight and war tax.....................  250.00
"Price on extra equipment................

    "Total. . . . . . . . . . . . . . . . . . . . . . . . . . .$4,850.00
"Allowance on car.......................

    "Net total .........................$4,850.00."

The order was accepted by the company on May 11th,
1920. On the same day a conditional sale agreement was
signed by the parties, at the head of which was the statement:
    "Selling price .........................$4,850.00
    "Freight and charges.....................
    "Finance charges .....................  513.00
    "Time price .........................  5,363.00."

There is in the record, at the head of a note, what is
called "Schedule of Payments," showing $357.53, payable in
each of ten months, beginning one month after date, except
that the last one is $357.57. A note under seal was signed by
William H. Narer and Catherine Narer, who was his wife,
for $3,575.34, payable at the times stated in the "Schedule
of Payments" to the Beam Motor Car Company or order,
at the office of the Finance and Guaranty Company. It is
agreed that title to the car was to remain in the legal holder
of the note until fully paid. That note was assigned to the
Finance and Guaranty Company by the Beam company. The
purchaser was credited with some payments made when he
purchased the sedan car and some others allowed, which, as
we understand, reduced the amount to the $3,575.34 in the
note. When the first payment became due the purchaser de-
manded the allowance of $300 for the Ford car and offered
to pay the balance ($57.53), which he said he had in his
pocket. At that time Mr. Beam denied that he had agreed

to pay for the Ford. They had some argument about it, and Beam told Narer he would hold both cars—Narer having left for some purpose the one purchased at the garage of the Beam company. A few days later Beam called him up and offered to pay him the $300 for the Ford car, but he replied, "I don't want anything to do with you; I don't want any dealings with you whatever. He said, 'If you want the $300 for your Ford car, come over and I will give it to you''; I said, 'No, all I want is my Ford car'; he said, 'All right, you can have that,' so I went and got my Ford car." Afterwards the company notified Narer that it would sell the Premier car on his account, and later it did sell it and sent him a statement, in which it was claimed the balance due was $95.20.

This suit was brought by Narer and his wife on the theory that they had rescinded the contract for the Premier car, and could recover the money paid. We do not understand why Mrs. Narer was made a plaintiff, as he was the purchaser, but no point was made about that. They recovered a judgment for $600 against the company, from which judgment this appeal was taken. Three bills of exception are in the record, but the first is not pressed—leaving for our consideration the second, for the refusal to strike out certain testimony admitted subject to exception, and the third, which embraced the rulings on the prayers—the court having rejected the defendant's first, third, fourth and fifth prayers, but in their brief their exception to the fifth is waived.

In the second exception there is a motion to strike out "all testimony relating to the terms, stipulations and agreements connected with the purchase of the Premier touring car and particularly to all parol evidence of the alleged agreement on the part of the defendant to sell the Ford truck for $300 within two weeks, or to allow $300 therefor, because said testimony contradicts the terms of the written agreement between the parties thereto," but the motion was overruled. The first part of that motion is very general, as it would

require the court to hunt through the record to see what testimony had been admitted subject to exception, and whether all of it was objectionable, even if some be conceded to have been, but the material part is in reference to the Ford truck. The documentary evidence shows that in the contract of sale and purchase of the Premier car there was no provision by which the defendant undertook to sell or pay for the Ford truck, but on the contrary it would seem to show affirmatively that it was not intended to make that a part of the agreement. As we have seen above, in the order for the automobile there are statements of the price of the car, freight and war tax, making a total of $4,850, and then there is an item of "allowance on car," the amount of which is left blank, and below the net total of $4,850 was again given. No sufficient excuse was given for the plaintiffs not seeing that, or knowing what it was before they signed the order, which distinctly states that "no agreement, verbal or otherwise, not embodied herein, will be recognized as binding." In what is called "Conditional Sales Agreement" the selling price is again stated, and then the balance due was given in the note, which is signed by the plaintiff, with a schedule of monthly payments as shown above.

At the most, therefore, the alleged agreement as to the $300 was a collateral one, and not a part of the contract under which the Premier car was purchased, and we find nothing in the record to authorize the plaintiffs to rescind the contract of purchase because of the non-payment by the defendant of the $300 for the Ford truck. In *Brantly on Contracts,* 415, it is said by that author: "It is not every breach of contract, or failure exactly to perform, which justifies a rescission. If the promise which is broken is subsidiary, that is, one which does not go to the root of the matter, defeating the object of the contract, and where the breach can well be compensated by damages, the other party cannot rescind for this reason." It would not seem to be necessary to cite other authorities to show that the appellees did not have authority

under the circumstances to rescind the contract because the amount agreed to be paid, as claimed by them, was not allowed on the monthly payment of the note when due, but there is in 6 *R. C. L.* 926, par. 311, a very satisfactory discussion of the subject.

The conduct of the appellant cannot be commended. It not only refused to pay the $300 or credit Narer with that amount when he offered to pay the balance in cash, but it refused at first to give up the Ford car, which it had before the sale of the Premier car was consummated, and also had the Premier car, which Narer had left at the garage for repairs. But, while it is not stated in so many words, the evidence tends to show that Narer knew that the Beam company had assigned the note, contract, etc., to the Finance and Guaranty Company, which still held them when he had the controversy with Mr. Beam. The Beam Company could not then have rescinded the contract without the consent of the Finance and Guaranty Company, and there is nothing to show that that was given, and under the contract which the parties signed, a failure to make one of the monthly payments caused the whole note to become due, and the vendor had the right to take possession of the property, which it already had, as stated above.

Inasmuch as the refusal of Beam or his company, assuming that he was acting for it, to pay the $300, did not authorize the plaintiffs or either of them to rescind the contract, for reasons which we have already given, and there is nothing to show a rescission of it by the motor company or the Finance and Guaranty Company, its assignee, the plaintiffs were not in a position to sue for and recover money paid on account of the contract under the count for money had and received, or any other of the common counts used. The evidence in reference to the $300 for the Ford truck was wholly immaterial and irrelevent, and should have been stricken out. Therefore, there was error in the ruling in the second bill of exceptions.

From what we have said it will be seen that there was also error in not granting either the first or third prayer of defendant, the latter being preferable in form.   It becomes unnecessary to discuss the fourth.   As nothing in the record appears to us to justify a recovery, we will not remand the case for a new trial, but if we have overlooked any possible ground for it, we will entertain an application to remand the case if made within thirty days from the filing of this opinion. If Narer had not accepted the Ford truck there might have been some ground for recovery of the $300, but his acceptance of the truck would seem to have settled that question.

> *Judgment reversed, the appellees to pay the costs above and below.*