SIDNEY KAHN *v.* SOLOMON SCHLEISNER.

[No. 35, April Term, 1933.]

*Decided May 26th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Sidney A. Goodman,* with whom was *A. Leonard Goodman* on the brief, for the appellant.

*Daniel B. Leonard,* with whom were *Bowie & Burke* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

The testimony in this case tends to show, and it is uncontradicted, that some time in the month of April, 1929, the appellee approached the appellant and suggested that they buy shares of stock of the Central Aguirre Sugar Company, of the large earnings of which company appellee professed to have knowledge; that appellant at first hesitated about it, whereupon appellee said he would guarantee appellant against loss, and divide any profits that might arise out of the transaction; that appellant had no knowledge of this stock, but relied entirely on appellee; that following this discussion they came to an agreement to purchase some of the stock and took the matter up with Mr. Frank Cahn of the firm of Frank B. Cahn & Company; that, after they discussed the matter with Cahn, appellant put up ten shares of the Fidelity & Deposit Company and fifteen of First National Bank as

collateral, which was satisfactory to the brokers and to appellee; that, after the securities were deposited, and while both appellant and appellee were in Cahn's office, he drew up a contract which, after leaving Cahn's, they signed at appellee's office; that, while the contract was being prepared, they discussed with Cahn the details, one particularly being that appellee should have the right to purchase and sell the stock during 1929. The contract was as follows:

"Whereas Sidney Kahn and Sol. Schleisner have entered into a joint account, in which joint account they intend to purchase 200 shares Central Aguirre Sugar Company common stock through their brokers, Frank B. Cahn & Company.

"Whereas such purchase is to be made at the discretion of Sol. Schleisner, and the sale of the said stock is to occur at such time, and at the discretion of Sol. Schleisner.

"Now, therefore in consideration that said Sidney Kahn has deposited $5,000.00 as margin against such proposed purchase, and agrees to maintain sufficient margin with said Firm;

"Now, therefore, said Sol. Schleisner agrees that in event of the sale of the stock, at any time during 1929, and this agreement contemplates the sale of said stock during such period, that the said Sol. Schleisner agrees, on his part, to assume any loss arising out of said transaction, and agrees, further, that any profit arising out of said transaction shall be divided equally with said Sidney Kahn.

"S. Schleisner,
"Sidney Kahn."

It further appears that appellee put in an order to buy the stock at $37½ per share, and the stock was bought a day or two afterwards; that appellant was out of town when the stock was bought, but was notified by the broker that the stock had been bought and was being carried in an account designated as "Mr. Sidney Kahn Special Account"; that appellant was not required to produce additional collateral

during the year 1929; that in December, 1929, he asked appellee to sell the stock, but it was then selling for less than they paid for it, and appellee said he did not want to sell it, because he felt sure there would be a substantial rise in values; that appellant saw him again about January 20th, 1930, and asked him what he intended to do about the stock, and he said "he would give me some money to take care of this immediately after the close of the fiscal year," which was February 28th; that he saw him again in March, and appellee said he could not do anything at that time, because he had to pay $2,000 to the government on an income tax claim; that, on demand of the brokers, appellant put up additional collateral three times in 1930, and each time he advised appellee; that appellant desired to sell the stock in 1929, but had no right to do so; that the stock was kept by the brokers as collateral; that appellant agreed with appellee, about January 20th, 1930, to carry the stock, because appellee agreed to put up either money or securities after his fiscal year, the end of February; that at the time the account was opened appellee was present, and that the collateral deposited was acceptable to the brokers; that the agreement to carry the stock over in 1930 was at the request of appellee; that the stock was sold December 15th, 1930, and appellee paid Frank B. Cahn & Company $3,800, which the account showed to be the loss on the sale, plus interest and commissions and carrying charges, less dividends.

The above account of the transaction as given by appellant was supported by the testimony of Frank B. Cahn. It appears from his testimony that he knew of the arrangements between appellant and appellee, and that he knew the account that was opened was in pursuance of these arrangements; that the stock was actually purchased by and delivered to the brokers as agents of the purchasers, and the brokers could have delivered it at any time on payment of the purchase money; that, when the stock was sold, the account was secured by $4,000 Chicago Railway 5's and $1,000 Interborough Rapid Transit 5's, put up by appellant in addition to the original collateral.

After the sale of the stock, demand was made by appellant on appellee for payment of the loss on the sale, and, on his refusal to pay, suit was brought, which resulted in a judgment in favor of defendant for costs. This appeal is from that judgment. The only bill of exception is on the refusal to grant plaintiff's first and second prayers, which were as follows:

Plaintiff's Prayer No. 1.—The plaintiff prays the court to instruct itself, sitting as a jury, that if it shall find that the plaintiff and defendant entered into the contract mentioned in the evidence for the purchase in a joint account through Frank B. Cahn & Company, brokers, 200 shares of Central Aguirre Sugar Company common stock to be secured by the plaintiff and that the purchase and sale of the said stock was to be in the sole discretion of the defendant, and that any profit made by the sale of the said stock was to be equally divided between the plaintiff and the defendant, and that any loss was to be borne entirely by the defendant, and that the said stock was to be sold by the defendant during 1929, and if the court shall find that the said 200 shares of Central Aguirre Sugar Company common stock were purchased by the direction and consent of the defendant on or about the first day of May in 1929, and placed in the name of the plaintiff in a special account opened with Frank B. Cahn & Company, brokers, instead of a joint account as referred to in the contract, and if the court shall further find that the plaintiff secured the purchase of the said stock from the date of purchase to the date of sale, and if the court shall further find that the said stock was sold by the direction or consent of the defendant on or about the 16th day of December, 1930, and that as a result of the sale of the said stock a loss was sustained which was paid by the plaintiff, and if the court shall further find that the amount of the loss was made known to and demanded of the defendant and the defendant has refused and failed to pay the plaintiff the amount of the loss, then the verdict must be for the plaintiff, if the court, sitting as a jury, shall further find that there

has been a waiver of the provision of the contract relating to the sale of the said stock during the year 1929.

Plaintiff's Prayer No. 2.—The court instructs itself, sitting as a jury, that if it shall find that the defendant did not instruct or direct the firm of Frank B. Cahn & Company, brokers, to sell the said 200 shares of Central Aguirre Sugar Company common stock during the year 1929, if the court, sitting as a jury, shall so find, then that provision of the contract mentioned in the evidence relating to the sale of the stock during 1929, shall be deemed to be waived.

The suit was brought on the common counts and an additional count on the written contract. A bill of particulars, filed on demand, set out as plaintiff's claim the amount due plaintiff by the defendant for loss sustained by the plaintiff in the purchase and sale of 200 shares of Central Aguirre Sugar Company common stock under their contract of April 29th, 1929, giving the purchase price, interest, commissions, and carrying charges and crediting dividends and sales price.

The case was tried before the court without a jury, and was submitted on plaintiff's testimony. The case apparently was defended on the following grounds: (1) That plaintiff did not perform his part of the contract, in that (a) the stock was carried in plaintiff's account and not in a joint account; (b) failure to give defendant control over such account; (c) failure to margin such account by depositing $5,000. (2) That it was a gambling contract.

That the trial court did not accept defendant's first ground is apparent from the refusal of defendant's third prayer, and the granting of plaintiff's third prayer, which were as follows:

Plaintiff's Prayer No. 3.—If the Court, sitting as a jury, shall find for the plaintiff, then its verdict shall be for the cost price of the stock, plus the brokerage commission, plus the interest and carrying charges of the broker from the date of purchase to the date of sale, less the sales price, minus broker's commission, and less the dividends paid on the stock from the date of the purchase to the date of sale.

Defendant's Prayer No. 3.—The court instructs itself, sitting as a jury, that this suit is brought for recovery by the plaintiff against the defendant of the plaintiff's loss with respect to the purchase of 200 shares of Central Aguirre Sugar Company common stock under a written contract between the plaintiff and defendant, dated April 29, 1929, the declaration in this case alleging said written contract and failure of the defendant to perform the same; that it appears by the uncontradicted evidence in this case that the plaintiff did not perform his part of said contract and therefore under the pleadings in this case the verdict of the court, sitting as a jury, must be for the defendant.

The verdict, therefore, must have resulted from the court's finding that it was a gambling contract. That is only important for the purposes of this appeal in so far as it sheds light upon the ground of the refusal of plaintiff's first and second prayers.

There was a special exception filed to plaintiff's first prayer "because there is no evidence in this case legally sufficient to show that the shares of stock mentioned therein were sold by the direction and consent of the defendant, and because there is no evidence in the case legally sufficient to show that said shares when purchased were placed by the direction and consent of the defendant in the name of the plaintiff in a special account instead of a joint account as referred to in the contract and because said prayer submits a question of law to the court sitting as a jury in that it requires the court sitting as a jury to find a waiver of the provision of said contract relating to the sale of the said stock during 1929 and because there is no evidence in this case legally sufficient to show any such waiver." We find nothing valid in this special exception, except as to the submission of the question of waiver. It is error to submit the question of waiver to a jury unaccompanied by any instruction as to what acts or conduct of the defendant would be sufficient to constitute a waiver. *Pentz v. Penn. Fire Ins. Co.*, 92 Md. 444, 450, 48 A. 139; *Sumwalt Ice Co. v. Knick-*

*erbocker Ice Co.,* 112 Md. 437, 444, 77 A. 56; *Phillips Sheet & Tin Plate Co. v. Boyer & Co.,* 133 Md. 119, 132, 105 A. 166. But plaintiff's second prayer was a proper instruction as to waiver on the uncontradicted evidence in the case.

We cannot conceive of the trial court rejecting plaintiff's first prayer because the question of waiver was improperly submitted by that prayer, when by granting the first and second prayers together, such an error would have been corrected. The second prayer was really supplementary to the first prayer, as much as if it were made a continuation of the first prayer by leaving out the separate number and adding the exact language to the first prayer. Indeed, we think the condition of finding a waiver might be treated as surplusage, and entirely disregarded or eliminated from the first prayer.

The contract, properly construed, bound the appellee to sell the stock in 1929. If he failed to do so, he was liable, nevertheless, for any loss which occurred in a sale after that time. He cannot complain that appellant did not sell immediately after the close of that year, if the delay was at appellee's request, as the uncontradicted evidence shows it was. But, even if the payment of the loss was conditional upon the sale of the stock in 1929, where the promise to pay is on the happening of a certain event and the party promising prevents the event from taking place, the condition is dispensed with. *Rumsey v. Livers,* 112 Md. 546, 552, 77A. 295.

There is abundant evidence that all the parties, including the brokers, understood that the special account opened in appellant's name, and marked "special", was intended to be treated as a joint account, and that the brokers with whom the stock was left as collateral understood that the appellee had control of the sale of the stock during the year 1929.

We do not find any merit in the special exception on the ground that there was no evidence that the stock was sold by the direction or consent of the appellee. There is evidence that the stock was carried after 1929 on the agree-

ment of appellee to put up money or collateral on the margin account, and that he failed to do so when notified by appellant that additional security was required by the brokers and requested to comply with his promise. In these circumstances a consent to sell the stock was implied.

Two questions remain to be considered: (1) Was the failure of appellant to deposit $5,000 such a substantial departure from the terms of the contract as to justify appellee in refusing performance? (2) Is there any evidence that the contract was a gambling contract?

As to the first, we are satisfied that there was a substantial compliance with that provision of the contract when appellant put up collateral satisfactory to the brokers. In *Ady v. Jenkins*, 133 Md. 36, 104 A. 178, there was a bill for specific performance. Defense was made on the ground of failure of performance by plaintiff as to one specification of the contract. A decree granting specific performance was affirmed. This court cited with approval *Brantly on Contracts*, pp. 415, 436, 300 and 401, and 6 *R. C. L.*, pp. 925 to 928, inclusive, where it is stated in substance that, if the promise which is broken is subsidiary—that is, one which does not go to the root of the matter, defeating the object of the contract, and wherein the breach can well be compensated by damages—the other party cannot refuse performance for this reason. See, also, *Beam Motor Car Co. v. Narer*, 141 Md. 187, 191, 118 A. 401; *Speed v. Bailey*, 153 Md. 655, 659-662, 139 A. 534; *Hammaker v. Schleigh*, 157 Md. 652, 668-669, 147 A. 790. The only difference it could have made to appellee was in the matter of interest on the extra amount advanced by the brokers. This could have been allowed for in the verdict.

Appellee contends that the question whether the contract was a gambling contract should have been submitted to the court sitting without a jury, and that plaintiff's first prayer was defective in not so submitting it. But we find no evidence of a gambling contract. It deals with a matter of purchase and sale of stock, which was actually bought and held by

the brokers as agents for the purchasers. The law on this subject is well settled in Maryland. There is a line of cases such as *Stewart v. Schall,* 65 Md. 289, 4 A. 399; *Billingslea v. Smith,* 77 Md. 504, 26 A. 1077; *Farmers' Milling & Grain Co. v. Urner,* 151 Md. 43, 134 A. 29, which hold that certain contracts were gambling contracts; and another line, such as *Dryden v. Zell & Merceret,* 104 Md. 345, 65 A. 33; *King v. Zell,* 105 Md. 435, 66 A. 279; *Richter v. Poe,* 109 Md. 20, 71 A. 420, 422, which hold that certain other contracts were not gambling contracts. There is no difference in the principles announced in the two classes of cases, but only on the facts. As was said in *Farmers' Milling & Grain Company v. Urner, supra,* there is no law against speculating. A man can buy an article or commodity today and sell it tomorrow, or next year, without in any way violating the laws against gambling. It must not, however, be a mere bet, where the intention of the parties, at the inception of the contract, is that there is to be no delivery of the articles dealt in, but merely a settlement of differences in prices.

In *King v. Zell & Merceret, supra,* the suit was by brokers against a customer for balance due for shares of stock purchased by brokers for the defendant, and carried by the brokers on margin. The testimony of the brokers was that the stocks were actually purchased for defendant by the brokers and could have been delivered to him at any time on payment of the balance due, and their testimony was uncontradicted. This court held that a prayer that there was no evidence of a gambling contract or that said transactions were other than *bona fide* transactions was properly granted. The court said in that case that the law presumes the validity of the contracts, and the burden of proof to show that they were mere gambling contracts is upon defendant, citing *Dryden v. Zell & Merceret, supra.* The present case comes well within the facts of that case, and is controlled by the principles there laid down, and also in *Richter v. Poe, supra.* In the last-mentioned case this court said: "There is a broad

and well-recognized distinction between a gambling contract and a speculative contract for the purchase and sale of stocks on margin. Such transactions are valid." The court set out "the true relations which exist bewteen the broker and the customer in such cases, in the absence of some special agreement, where the stock is purchased on margin for speculative account," and the facts of the present case are within the principles there announced. See, also, *Cook on Corporations* (6th Ed.), sec. 457; *Elliott on Contracts,* vol. 2, sec. 1002.

Our conclusion is that plaintiff's first and second prayers should have been granted in connection with each other; that plaintiff's third prayer, which was granted, should have been modified so as to adjust the matter of interest hereinbefore referred to; that all of defendant's prayers were properly refused.

*Judgment reversed, with costs to appellant, and case remanded for a new trial.*