## MARGARET PENTZ, Executrix, *vs.* THE PENNSYLVANIA FIRE INSURANCE CO.

*Fire Insurance—Evidence—Compromise—Waiver of Proof of Loss— Offer to Settle—Impeaching Witness—Instruction to Jury.*

An offer to compromise a claim, which was unaccepted, is not admissible in evidence against the party making it.

In an action on a policy of fire insurance, when defendant's adjuster and representative testified that he had attempted to "settle" the loss, he may be asked by the plaintiff what offer of settlement he had made, provided it is shown that the witness did not mean by settlement a compromise of the matter, but that there was a conceded loss under the policy, and the dispute was merely as to the amount thereof. In the latter case such evidence would be admissible to show that the refusal to pay was based upon other grounds than the plaintiff's failure to furnish proof of loss, and that therefore the defendant had waived such proof.

In an action by an executrix to recover for a loss under a policy of fire insurance on personal property, issued to her testatrix, the inventories of the estate returned by the plaintiff to the Orphans' Court, showing the value of the estate to be less than one-half of the value fixed by the proof of loss furnished to the defendant, is admissible in evidence to impeach plaintiff's testimony as to the value of the property destroyed by the fire.

When the plaintiff in an action on a fire insurance policy contends that the defendant had waived the proof of loss required by the policy, and the alleged waiver is to be inferred from facts resting entirely upon parol evidence, the question of waiver *vel non* is one for the jury under instructions from the Court indicating to them the portions of the evidence from which they may infer the waiver, but in such case it is erroneous to leave to the jury the broad question whether there was a waiver, without any indication of what facts they must find from the evidence in order to infer the waiver.

Appeal from the Superior Court of Baltimore City (STOCK-BRIDGE, J.) The trial Court rejected all of the defendant's prayers, and of its own motion granted the following instruction, as matter of law, for its own guidance, sitting as a jury and as a modification of the plaintiff's first prayer: "The Court rules as a matter of law, that if it appears from the

evidence that the plaintiff never furnished to the defendant such proofs of loss as were under and by the terms of the policy sued on in this case required to be furnished, although the same were duly demanded by the defendant; and shall further find that the proofs of loss as furnished were not such reasonable compliance with the conditions of the policy as it was within the plaintiff's power to have made, under the circumstances as testified to concerning the loss in this case; and shall further find that there was no waiver of the proofs of loss as required by the policy, then the verdict must be for the defendant." The verdict was for the defendant.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Wm. Pinkney Whyte* and *Moses Sonnehill*, for the appellant.

*Alfred J. Carr*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court:

This is an appeal from a judgment of the Superior Court of Baltimore City, sitting without a jury, in favor of the appellee in an action brought to recover upon a policy of fire insurance issued by it.

The policy was issued on August 9th, 1899, to the appellant as executrix of the personal estate of Nellie Singer, and it insured in the amount of $4,000, the household furniture, etc., in a dwelling on Park Heights avenue, near Baltimore City. There were provisions in the policy compelling the insured, in case of loss or damage by fire, to furnish within 60 days thereafter preliminary proofs of loss, with an inventory of the property damaged or destroyed, and also, if required, to furnish the usual certificate from the magistrate or notary living nearest to the fire as to the *bona fides* of the loss, and further requiring the insured to exhibit for examination as often as requested all books of accounts, bills, invoices, etc., or copies thereof if the originals could not be procured.

The insured property, together with the dwelling in which it

was located, was totally destroyed by fire on December 12th, 1899. On the 21st of the same month the insured sent to the appellee, upon the blank forms furnished by it, sworn preliminary proofs of a total loss without any schedule or inventory in detail of the burned property. On the back of these forms was printed a magistrate's certificate which will be mentioned later on in this opinion.

. On January 10th, 1900, the appellee notified the appellant that these proofs were unsatisfactory because they failed to contain a schedule of the articles lost or damaged. In response to this notice the appellant on January 20th, 1900, sent to the appellee a detailed schedule and inventory of the articles destroyed by the fire fixing their aggregate value at $6,919, protesting at the same time that she had already furnished all the proof which she was under obligation to make. On February 14th, 1900, the appellee acknowledged the receipt of the schedule, but at the same time demanded of the appellant the bills showing the purchases of the furniture, and also a certificate from the nearest magistrate as provided for in the policy. In response to these demands the appellant replied by letter that she was unable to furnish the bills for the furniture for they had been consumed in the fire and she did not know where or from whom her testatrix had purchased it. She further in the same letter informed the appellant that the magistrate had declined to sign the certificate in the form furnished by it because that form required him to certify, in addition to the facts called for by the policy, " that he was well acqainted with the character and circumstances of the insured, " which he declined to do as he did not personally know the appellant who did not reside on the premises where the insured property was but in Baltimore City. She at the same time forwarded to the appellee a copy of an explanatory letter from the magistrate which was tantamount to a certificate of the matters called for in the policy, and she offered to permit an inspection of the original letter if it was desired. The record does not show that the appellee made any reply to or comment upon this last communication from the appellant.

The loss not having been paid suit was brought upon the policy. The appellee, as defendant filed general issue pleas and a special plea setting up a failure on the part of the plaintiffs to furnish proof of loss according to the requirements of the policy.

The record presents for our consideration seven exceptions six of which relate to the testimony and the seventh to the prayers. We will consider first the exceptions to rulings upon the testimony.

At the trial of the case the agent of the appellee who placed the policy and collected the premium on it, was asked when on the stand by the plaintiff's counsel whether he had been authorized by the defendant " to make an offer compromise of this case." The defendant objected and the Court sustained the objection and the plaintiff took his first exception. This ruling of the Court below was correct. It is settled by numerous decisions of this and other Courts that an offer to compromise litigation which was not accepted is not admissible in evidence against the party who made it. The law encourages amicable adjustments of litigation and permits the litigants " to make overtures to buy their peace without prejudice to them." *Groff* v. *Hansel,* 33 Md. 170; *Calvert* v. *Friebus,* 48 Md. 46; *Home Ins. Co.* v. *Baltimore Warehouse Co.,* 93 U. S. 548; *Tenant* v. *Dudley,* 144 N. Y. 504.

The Court below was also correct in sustaining the objection of the defendant to the questions to the same witness which are brought up by the second and third exceptions. He was asked whether he was authorized by his principal " to pay $3,500 in settlement of this insurance policy " or " to make a settlement before this suit was brought or before there was any talk of bringing a suit. " If these two questions had been accompanied by an offer to prove that the witness had in fact offered for his principal to make a settlement of the policy it would, for the reasons hereinafter mentioned in connection with the fourth exception, have been error to exclude them, but in the absence of an offer of such further proof the objection of the defendant to the question was properly sustained.

We think that the learned judge below erred in the ruling presented by the fourth exception.   The witness then under examination by the plaintiff's counsel was the adjuster and representative of the defendant.   He testified that he had attempted both by letter and personal interview to settle · what he described in one answer as " this loss," and in the other as " the loss under the policy."   He was then asked what offer of settlement he had made, and the Court upon the objection of the defendant excluded the question.   The word settlement, as ordinarily used, may mean a compromise for peace's sake of a claim, the validity of which is denied or it may signify the payment of a claim to the extent to which it is conceded to be due.   If the witness in the present case, by the use of the expression settlement, meant a compromise in the strict sense of a claim under the policy, although no loss was admitted, evidence of the compromise was not admissible.   If, on the contrary, he meant, as his previous answers seem to indicate that he did, that there was a conceded loss under the policy which he wished to settle, the dispute being merely as to the amount of the loss, the evidence was admissible under the rulings of this Court, in the *Caledonian Fire Ins. Co.* v. *Traub*, 86 Md. 96–7, as sufficient evidence to go to the Court, sitting as a jury, from which he might infer that the refusal to pay a greater amount of loss was upon other grounds than failure to furnish proof of loss, and that, therefore, there had been a waiver by the defendant of such proof.

If the answer of the witness had been that the defendant had offered to settle the loss under the policy by payment of· an amount which was admitted to be due, it would have been admissible under the ruling in *Traub's case*.   It would not, it is true, have furnished explicit and direct evidence of a refusal to pay by the defendant based upon other grounds than a failure of proof of loss, but it would have been legally sufficient to justify the inference to that effect which the Court, as a jury, was at liberty to draw for the admission by the defendant of any loss under the policy was an admission of its liability to that extent, at least, without proof of loss.   The wit-

ness should have been permitted to answer the question subject to exception, in order that the Court might ascertain whether the alleged offer to settle the loss was of a character to entitle it to be considered as evidence tending to establish a waiver of proof of loss. The evidence was offered generally, but if it was admissible for any purpose it should have been admitted and its sufficiency to establish the whole case would have been a question to be determined by the jury upon a prayer properly framed and presented after the evidence was closed. *Duval* v. *Duval*, 21 Md. 155; *Pegg* v. *Warford*, 7 Md. 606; *Byers* v. *Horner*, 47 Md. 32.

The fifth and sixth exceptions raise the question of the admissibility in evidence of the inventories of the personal property of her testatrix returned to the Orphans' Court by the appellant as executrix. The second of these inventories was sworn to by her on the day before she swore to the preliminary proofs of loss under the policy, and yet the aggregate value of the estate, shown by the two inventories, was less than one-half of the value fixed by the proof of loss on that portion which was destroyed by the fire. They were properly admitted in evidence as admissions by her tending to impeach her testimony as to the amount and value of the furniture destroyed by the fire, she having been asked, when upon the stand, if she had not filed the inventories.

The plaintiff offered two prayers and the defendant offered eight. The Court rejected all of the defendant's prayers and granted the plaintiff's prayers, but it gave an instruction of its own as a modification of her first prayer.

The instruction asked for by the plaintiff's first prayer was in substance, that if the Court, sitting as a jury, found from the evidence the issuing of the policy sued on, the destruction by fire of the insured property and also of the bills for the purchase thereof, and that the plaintiff furnished the most complete proof of loss which it was possible for her to do under the circumstances, she was entitled to recover. Her second prayer fixed the measure of damages at the amount of the policy and interest if the Court found that the actual cash

value of the insured property at the time of its destruction exceeded the amount of the policy.

The Court granted both of these prayers but added a modification of the first prayer to the effect that the plaintiff was not entitled to recover if the Court should find from the evidence that the proofs of loss furnished by her were not such a reasonable compliance with the requirements of the policy as it was within her power to have made, "and shall further find that there was no waiver of the proofs of loss as required by the policy." The portion which we have quoted of this modification was erroneous, as it was unaccompanied by any instruction as to what acts or conduct of the defendant or its agent, of which there was evidence in the case, were sufficient to constitute the waiver. When, as in the present case, the alleged waiver is to be inferred from facts and circumstances resting entirely upon parol evidence, the question of waiver *vel non* is one for the jury under instructions from the Court indicating to them the portions of the evidence from which they may infer the waiver, but it is erroneous in such cases to leave to the jury the broad question whether there was a waiver without any indication of what facts they must find from the evidence in order to infer the waiver. *Traub's case* on the first appeal in 80 Md. *224.*

It follows from what we have said that the judgment appealed from must be reversed and the case remanded for a new trial.

*Judgment reversed with costs and new trial ordered.*