## MUTUAL FIRE INSURANCE COMPANY OF MONT-GOMERY COUNTY *vs.* CHARLES D. PICKETT.

*Fire insurance policies: condition as to production of books, duplicate bills, etc.*

An insurance policy contained the following clause: "Whenever required the assured * * * shall produce and exhibit the books of account, bills of purchase, or duplicates thereof, and other vouchers, * * * " in support of the claim; and also to exhibit, and permit to be examined, by any person named by the company, the property damaged, etc. After a fire, which destroyed his books of account, an insured under such a policy, upon making his claim, failed to produce or exhibit his bills or duplicates when demanded, and testified that many of those that he did not produce he had made no effort to get, although he supposed he might have gotten them if he tried. *Held,* that under such a condition it was the duty of the plaintiff, when required by the defendant, to produce to the company duplicates of his bills, etc., before the loss could be payable.                                    p. 645

The object of this condition is to protect the insurer by requiring the insured to produce the means to test the accuracy of his proof of loss; it exacts nothing unreasonable or improper, and until one so insured can show that he has complied with a demand to furnish bills of purchase, or duplicates, or that it was not possible for him to do so by the use of all reasonable means within his power, he can not maintain an action on the policy unless the company has waived its demand.
                                    p. 644

Where, by the terms of the contract in an insurance policy, the loss is not payable until a condition has been complied with, or is waived, or is shown to be impossible, the insured, before he can recover, must show, either that he has complied with the condition, or that it is not possible for him to do so, or

that it had been waived by the insured, and upon his failure
to meet this burden the defendant is entitled to a verdict in
his favor.	p. 644

*Decided March 26th, 1912.*

Appeal from the Circuit Court for Baltimore County
(DUNCAN, J.).

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, BURKE, PATTISON, THOMAS, URNER and STOCK-
BRIDGE, JJ.

*R. E. Lee Smith* (with *Burke & Jenifer,* on the brief), for
the appellant.

*John G. Rogers* submitted a brief for appellee.

THOMAS, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered on
a fire insurance policy issued by the appellant and covering
property owned by the appellee.

The property, which consisted of a stock of goods in a
"general store" kept by the appellee at Florence, Maryland,
was entirely destroyed by fire on the 12th of March, 1909,
and the insured and insurance company being unable to
agree on the amount of the loss, suit was brought on the
policy in the Circuit Court for Howard County. The case,
at the instance of the defendant, was sent to the Circuit
Court for Baltimore County for trial, and the plaintiff recov-
ered in that Court a verdict and judgment for the full
amount of the insurance and interest.

The record contains but one exception and it relates to the
ruling of the Court below on the prayers, and in our view
of the case, it is only necessary to determine on this appeal
whether there was sufficient evidence to show that the plain-
tiff fairly complied with the condition of the policy which
provided that "whenever required, the assured or person

claiming shall produce and exhibit the books of account, bills of purchase, or duplicates thereof, and other vouchers to the insurers or their specially authorized agent, in support of the claim, and permit extracts and copies thereof to be made; and also exhibit to any person or persons named by this company, and permit to be examined by them, any property damaged on which any loss is claimed, and shall also, if required, submit to an examination or examinations under oath by the agent or attorney of this company, and answer all questions touching his, her or their knowledge of anything relating to such loss or damage, and subscribe and make oath to such examination, the same being reduced to writing. And until such proofs, examinations, declarations, certificates and exhibitions are produced and permitted by the claimant (when required) as above, the loss shall not be payable."

It appears from the testimony of the plaintiff that his books and papers were also destroyed, but that he made out an itemized list of the things in the store "two weeks after the fire, when it was fresh in his memory." The defendant was not satisfied with the proof of loss presented by the plaintiff, and wrote him requesting duplicate bills of all purchases made by him within nine months before the fire. In reply to this demand of the company the plaintiff sent the defendant a number of bills from merchants with whom he had been dealing, but, according to his own testimony, in a great number of instances, he not only failed to produce bills of articles purchased within the specified time, but made no effort to secure or furnish them. For instance, he states he bought axle grease from the Standard Oil Company; that the company's wagon came to his store every two weeks; that he "bought some things from the Standard Oil Company within nine months but did not furnish any bills to defendant and does not know whether he made an effort to do so." Again he states that he had in his store at the time of the fire about three hundred pounds of meat; that he bought meat from a number of persons named by him who lived in the neighborhood, and from whom he thinks he could

have gotten bills for the meat purchased if he asked for them; that he furnished a bill from Knoop Bros., but did not furnish bills from the others from whom he purchased meat within the nine months; that he did not try to get a bill for meat purchased from Mr. Driver; that he bought fresh meat from Mr. Condon in February, 1909, but did not furnish any bill from him; that he did not get them from any customers "that he was taking things from in trade, did not try to get them and did not go to them." He says further that he had on hand at the time of the fire five or six hundred pounds of coffee and tea, but did not "furnish bills for coffee and tea because he did not think to get those bills."

It does not appear what the bills or proof of loss furnished by the plaintiff to the defendant amounted to, but it does appear that, in addition to the items we have already referred to, much of the property purchased by the plaintiff within nine months before the fire, which was said to have been destroyed and for which plaintiff sought to recover, was not covered by the bills produced, and the evidence fails to show that he made any effort to secure bills for such property, or that it was impossible for him to obtain them.

The plaintiff's first prayer required the jury to find that he furnished duplicate bills of all purchases made by him within nine months prior to the twelfth of March, 1909, the date of the fire, as far as it was possible for him to do so under all the circumstances of the case. The defendant specially excepted to this prayer on the ground that there was no evidence in the case to show that the plaintiff did furnish duplicate bills of purchases made within the specified time as far as it was possible for him to do so, and by its second prayer requested the Court below to instruct the jury that under the condition of the policy referred to it was the duty of the plaintiff, when required by the defendant, to produce to the company duplicates of his bills of purchase, before the loss could be payable; that the plaintiff was required by the defendant to furnish duplicate bills of purchase made by him within nine months before the

fire; that it indisputably appears from the evidence that he did not produce to the defendant a number of said bills or duplicates thereof, and that he has not shown that it was impossible for him to do so, and that, therefore, their verdict should be for the defendant.

The evidence in the case to which we have alluded shows that the learned Court below erred in overruling the exception and rejecting the prayer referred to.

The condition of the policy with which we are here dealing, was construed by this Court in the case of *Farmers' Fire Ins. Co.* v. *Mispelhorn,* 50 Md. 180. In that case JUDGE ALVEY said: "The insured was not only bound to produce and exhibit to the company or its agents, upon being required to do so, the bills or purchase, if 'within his power or control, but if they were destroyed, as he himself proved, he was bound to produce duplicates thereof, if it was possible for him so to do. And it was no excuse for his failure to produce such duplicates that they were not in his possession or at his command at the time of the demand made; if they could have been had by application to those who could have furnished them, he was bound to secure and exhibit them as required. Compliance with this condition, if required by the company, was indispensable to the insured's right of action, and there is no answer to the objection that he failed to comply, unless he could show, either that compliance had been waived, or that performance of the condition had become impossible without fault of his own." It is true that, notwithstanding the plaintiff stated that he told the agent of the company that he could not get the duplicates required, and further stated that he did not furnish them, and did not apply to anyone from whom he purchased goods to furnish him duplicate bills of purchase, the Court, in reversing the judgment in favor of the plaintiff, said that there were some circumstances before the jury reflecting upon the question of the inability of the plaintiff to gratify the demand of the defendant, and that the prayer of the defendant should not have

sought to withdraw that question from the jury. That case was before this Court again (53 Md. 475) on appeal from a judgment in favor of the defendant, and the same learned judge, in approving the rejection of plaintiff's third, fourth and fifth prayers, then said: "Whether it was possible or impossible for the plaintiff to produce duplicate bills of purchase, was purely a question of facts to be determined by the jury from all of the evidence before them; and though it might be found that it was impossible to produce duplicate bills of purchase of a certain class, that fact did not excuse the non-production of those that could have been obtained by a *bona fide* effort on his part. The plaintiff could not be relieved from the duty imposed upon him by the contract, by simply sending out his wife to procure duplicate bills from parties with whom she had been in the habit of dealing; nor could he meet the requirement of the condition in the policy, by showing that he supposed or believed that duplicate bills could not be obtained. The burden of proof was upon him to show that it was not possible for him to comply with the terms of the condition, by the use of all reasonable means within his power."

In the case at bar, the plaintiff not only failed to meet the burden of proof that was upon him to show that it was impossible for him to comply with the terms of the policy, but he states that he could have gotten some of the bills if he had asked for them, and that he did not try, made no effort and did not think to get others.

The object of the condition of the policy in question is to protect the insurer, by requiring the insured to produce the means by which the insurance company can test the accuracy of the proof of loss furnished by him. It does not exact from the insured anything unreasonable or impossible, and until he can show that he has complied with a demand to furnish bills of purchase, or duplicates thereof, or that it was not possible for him to do so by the use of all reasonable means within his power, he can not maintain an action on the policy, unless the insurance company has waived its

demand.  By the terms of the contract upon which the insured
in this case relies, the loss is not payable until the condition
has been complied with or is waived or shown to be impossi-
ble to be performed.  Therefore, in order to make out a case
the insured was required to show, either that he had complied
with the condition; that it was not possible for him to do so,
or that it had been waived by the insured, and upon his fail-
ure to meet this burden upon him the defendant was entitled
to a verdict in its favor.

There may be cases where the insured can not, by the use
of such reasonable means as are within his power, secure
bills of purchase or duplicates thereof, and when that is
shown to be the case, it is a sufficient excuse for a failure to
comply with a demand for them under a provision like the
one in question.  *Mispelhorn* v. *Farmers' Fire Ins. Co.,*
*supra;; Coleman* v. *N. Y. Bowery Fire Ins. Co.,* 177 Pa. St.,
35 Atl. 729.  But where a party who has deliberately entered
into a contract invokes the jurisdiction of a Court to enforce
it, he must show compliance with its terms, or some valid
ground for his failure to do so, otherwise judgment will be
entered against him.

In the case of *O'Brien* v. *Commercial Fire Ins. Co.,* 63 N.
Y. 108, the Court, speaking of a similar provision in a fire
insurance policy, said: "A full compliance with this condi-
tion was indispensable to a right of action upon the policy,
unless a compliance was impossible or was waived by the
insurers."  In the case of *Logan* v. *Royal Ins. Co.,* 162 Pa.
St. 357, 29 Atl. 710, Chief Justice Sterritt said: "In the
case at bar, the plaintiff not only failed to show that he could
not procure the duplicate bills demanded, but proved by his
own testimony, most conclusively, that he never made the
slightest effort to obtain them.  * * *  It follows from what
has been said that there was no testimony to warrant the
instructions contained in those portions of the charge recited
in the second and third specifications; and, in view of the
plaintiff's own testimony that he made no effort to comply
with the just and reasonable demand of the company, the

learned trial Judge should have directed a verdict for the defendant, as requested in its sixth point."

Because of the failure of the plaintiff to furnish duplicates of the bills of purchase and his failure to show or to produce evidence tending to show that it was not possible for him to do so, the judgment of the Court below in his favor must be reversed.

*Judgment reversed, with costs.*