## GRANGERS' MUTUAL FIRE INSURANCE COMPANY *v.* FARMERS' NATIONAL BANK.

[No. 32, January Term, 1933.]

*Decided March 21st, 1933.*

The cause was argued before Bond, C. J., Pattison, Urner, Offutt, Digges, and Sloan, JJ.

*Ridgely P. Melvin,* for the appellant.

*James M. Munroe,* for the appellee.

Urner, J., delivered the opinion of the Court.

The Farmers' National Bank of Annapolis and the Grangers' Mutual Fire Insurance Company of Frederick County are competing claimants with respect to the surplus proceeds of a mortgage foreclosure sale of certain real estate in Anne Arundel County. The bank claims the fund as a judgment creditor of the mortgagor, and the insurance company relies upon the terms of the subrogation agreement in the standard mortgage clause attached to its policy, issued to the mortgagor, insuring the buildings on the mortgaged land. Fire having destroyed some of the buildings, the insurance company paid the adjusted loss, amounting to $1,750, to the mortgagee, while disclaiming its liability to the mortgagor for a reason to be presently stated and discussed. The receipt given for the payment referred to that disclaimer and to the provisions of the subrogation agreement. The mortgage originally secured a debt of $5,500, which, at the time of the foreclosure, subsequent to the fire, had been reduced by installments received from the mortgagor, and by the application of the insurance money, to $3,322.38. After that amount, and $530.35 for taxes and the expenses of the foreclosure proceeding, had been deducted from the fund of $4,900 realized from the sale, there was an audited balance of $662.82, which is the subject of the rival claims as urged on exceptions to the audit.

The insurance company suspected that the fire was incendiary and procured an investigation of its origin by the state insurance department. While its report was not admitted in evidence, the record indicates that the suspicions of the company were not allayed, and that it adopted an attitude designed to enable it to rely upon any legal defenses which

might develop. No proof of loss having been presented by the insured mortgagor within sixty days after the fire, as required by the policy, the insurance company stood upon that reason for disavowing any liability to the mortgagor. The adjustment of the loss was made after the expiration of the sixty-day period and for the purposes of the payment to the mortgagee. No suit has been brought by the mortgagor on the policy, although it covered losses other than those for which the mortgagee was paid.

The standard mortgagee clause annexed to the policy included the following provisions:

"Loss or damage, if any, under this policy, shall be payable to the Federal Land Bank of Baltimore, as first mortgagee, as interest may appear and this insurance, as to the interest of the mortgagee only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy. * * *

"Whenever this Company shall pay the mortgagee any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee the whole principal due, or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee to recover the full amount of its claim."

The receipt given by the mortgagee to the insurance company recited the fact that the mortgagor covenanted to keep

the buildings on the mortgaged land insured for at least $2,100, and to cause the policy to be so indorsed as to inure to the mortgagee's benefit, and that the policy in question was accordingly obtained and indorsed and delivered to the mortgagee, that attached to the policy was the mortgagee clause from which we have quoted, and that while the policy was in force some of the insured buildings were destroyed by fire, and the loss, ascertained to be $1,750, was paid to the mortgagee by the insurance company, which, in making the payment, claimed that as to the mortgagor no liability therefor existed. Those recitals were followed by these paragraphs:

"Now, therefore, the undersigned, the Federal Land Bank of Baltimore, hereby acknowledges the receipt of said sum of $1,750.00 in full settlement, so far as it is concerned, of all claims for said fire loss against said Insurance Company and accepts such payment in full recognition of the above recited claim of said Insurance Company as to its non-liability to said mortgagor, subject, however, to the right of said Bank without impairment to recover the full amount of its claim; and the amount of such payment will be duly credited in the mortgage debt in the manner provided on the face and back of the mortgage note; and it will endorse thereon a statement showing that said payment was made by said Insurance Company and that to the extent of such payment said Insurance Company claims to be legally subrogated to all the rights of the said bank under all securities held as collateral to the mortgage debt.

"When the full amount of its mortgage debt shall have been paid to it, said Bank will not release or satisfy said mortgage without the consent of said Insurance Company, unless so ordered by a Court of competent jurisdiction: and furthermore, in case foreclosure proceedings on said mortgage are instituted by said Bank, it will promptly notify the Insurance Company of such foreclosure proceedings."

The questions to be decided are whether the insurance company had sufficient ground for its disclaimer of liability to

the insured mortgagor, and, if so, whether the surplus fund produced by the sale under the mortgage is within the purview of the subrogation clause. The lower court determined both of those questions adversely to the insurance company.

In *Frontier Mortgage Corporation v. Heft,* 146 Md. 1, 17, 125 A. 772, 778, where an insurer, declaring nonliability to a mortgagor, made a payment to the mortgagee under a subrogation provision similar to the one here considered, this court, in an opinion by Judge Digges, held that the right to subrogation does not depend merely upon a claim of no liability, but that the claim "must be based upon a state of facts, which, under the contract of insurance, would exempt the insurer from liability to the mortgagor or owner." The evidence adduced in this case establishes, in our judgment, the facts upon which the insurance company's claim of nonliability to the mortgagor is founded. It not only proves, without contradiction, that the mortgagor failed to comply with the policy requirement for the presentation of proof of loss within the specified period, but according to the preponderating testimony there was no conduct on the part of any representative of the insurer supporting the asserted theory of waiver. The mortgagor, called as a witness for the judgment creditor, testified in effect that the company's local agent promised him to do what was necessary to collect the insurance. The agent denied in his testimony that he had made any such statement. That denial is consistent with the position assumed by the president of the insurance company, who took direct charge of the matter immediately after the fire occurred. It is not a question here as to the legal sufficiency of the evidence upon the issue of waiver to justify its submission to a jury. The weight of the evidence must be considered, and we think it supports the conclusion we have stated as to the issue of fact.

In regard to the question of subrogation, it is argued that the provision invoked by the insurance company is not available because it refers only to collateral securities, which are said not to exist, and to an assignment of the mortgage, after

its payment in full by the insurance company, a course to which it did not resort.

When a policy of fire insurance has become void as to an insured mortgagor in consequence of his failure to comply with its conditions, he is no longer entitled to the benefit of the insurance. As said in *Frontier Mortgage Corporation v. Heft, supra,* page 17 of 146 Md. 125 A. 772, 778: "It is the breach or noncompliance by the mortgagor of or with one or more of the material conditions of the contract which works a forfeiture of his right to recover against the insurer and entitles it to subrogation." If, notwithstanding such a forfeiture, the mortgagor or his judgment creditor could successfully claim the fund paid by the insurer to the mortgagee to the extent to which it was not required for the mortgagee's indemnification, the insurer's declaration of nonliability to the mortgagor, however justifiable, would to that extent be futile. The plain purpose of the subrogation clause was to enable the insurer, after paying a loss to the mortgagee, with an accompanying and valid disavowal of liability to the mortgagor, to have the indemnifying benefit of any security for the mortgage debt which may not be needed for its satisfaction. The effect of the payment by the insurer to the mortgagee, under such conditions, is not to satisfy the mortgage debt to the extent of the amount paid, but to give the insurer a proportionate equitable interest in the mortgage as a fully subsisting obligation. If the payable insurance is sufficient to pay "the whole principal due or to grow due on the mortgage with interest," the insurer, upon paying the requisite amount of the insurance to the mortgagee, "as its interest may appear," is entitled to a full assignment and transfer of the mortgage, and of all other securities to which the subrogation clause refers. The other securities are any "held as collateral to the mortgage debt."

In *Washington Fire Insurance Co. v. Kelly,* 32 Md. 421, 439, it was said that mortgages are "regarded, in courts of equity, as mere securities for the payment of money, chattel interests or *choses in action;* the debt being considered the

principal, and the mortgage as accessory and appurtenant thereto. * * *" For the purposes of the subrogation clause the mortgage itself may well be regarded as collateral to the debt which it secures. There is certainly no logical reason why such a provision should be construed as distinguishing between mortgage and other securities with respect to the right of subrogation which it was intended to declare and protect. No cited case supports such a distinction.

The Connecticut Supreme Court of Errors, in applying a subrogation clause identical with the one quoted in this opinion, said, in *Savings Bank of Ansonia v. Schancupp,* 108 Conn. 588, 144 A. 36, 39: "The effect of this mortgage clause is that from the time the policy becomes void as to the mortgagor the insurance is only in favor of the mortgagee on its interest as such, and not an insurance on the property generally, to which the mortgagor, or his successor in interest therein, should be entitled. That the mortgagee should receive the primary benefit, and the insurers the opportunity for ultimate reimbursement, through such security as the mortgage note and mortgage may afford, accords with the general legal and equitable rights of the parties. *Clark v. Trainor* (1925), 237 Ill. App. 269, 274; note, *L. R. A.* 1916A, 562. The insurers, through their subrogation, virtually occupy the position of a purchaser from the mortgagee for value. *Insurance Co. of North America v. Martin, supra,* page 226 of 151 Ind. (51 N. E. 361). The payment, by them, does not operate to reduce or extinguish the mortgage debt or discharge the mortgage, but to satisfy, *pro tanto,* the mortgagee's claim and assign it to the insurers, leaving it in full force as against the mortgagor and those claiming under him, with no right, on their part, to claim a reduction of the debt by the payment to the mortgagee. *Allen v. Watertown Fire Ins. Co.,* 132 Mass. 480, 483; *Badger v. Platts,* 68 N. H. 222, 224, 44 A. 296; *Walker v. Queen Ins. Co.* (136 S. C. 144, 134 S. E. 263), *supra; Hare v. Headley,* 54 N. J. Eq. 545, 558, 35 A. 445; *Cooley's Briefs on Law of Insurance* (2d Ed.), pp. 628, 2390, and cases cited." Other decisions to the same general effect are noted in 52 *A. L. R.* 278.

Our conclusion is that the appellant insurance company is entitled to the surplus proceeds of the mortgage sale as against the opposing claim of the mortgagor's judgment creditor.

*Order reversed, with costs, and case remanded for an order in conformity with this opinion.*