736 A.2d 295

**HARTFORD FIRE INSURANCE COMPANY**

**v.**

**Herbert HIMELFARB et al.**

**No. 144, Sept. Term, 1998.**

Court of Appeals of Maryland.

Aug. 30, 1999.

**672**

George E. Reede, Jr. (Donald L. Speidel, Niles, Barton & Wilmer, on brief), Baltimore, for Petitioner.

Benjamin A. Klopman (M. Michael Cramer, Cramer & Klopman, Chartered, on brief), Rockville, for Respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and ROBERT L. KARWACKI (retired, specially assigned), JJ.

RODOWSKY, Judge.

This is an action under a commercial property policy by insureds against the insurer to recover for loss due to theft. The sole issue before us is whether the circuit court erred in granting summary judgment for the insurer based on the insurer's contention that the insured had failed to comply with the sixty day time limit on filing a proof of loss that is provided by ¶ E.3.a(7) of the policy. Paragraph E.3.a(7) is set

forth below, in the context of related provisions on which the insurer also relies.

"E. LOSS CONDITIONS

"The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

. . . .

"3. Duties In The Event Of Loss Or Damage

a. You must see that the following are done in the event of loss or damage to Covered Property:

. . . .

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

"4. Loss Payment

. . . .

(f) We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if:

(1) You have complied with all of the terms of this Coverage Part; and

(2)(a) We have reached agreement with you on the amount of loss; or

(b) An appraisal award has been made."

The insurer is the petitioner, Hartford Fire Insurance Company (Hartford). The insureds are the respondents, Herbert and Frances Himelfarb, husband and wife (the Himelfarbs). The Himelfarbs reside in Potomac, Maryland in the Washington, D.C. metropolitan area. The insured premises are a warehouse at 1327 Bayard Street (the Premises) in an industrial area in southern Baltimore City. In April 1992 the Himelfarbs had leased the Premises for ten years to Baltimore Woodworks, Inc. (Woodworks), and, as part of the transaction, the Himelfarbs had loaned $100,000 to Woodworks to be used for tenant improvements to the Premises and to buy equipment to be used in the tenant's operations.

The loan was secured, but the nature and extent of the security interest does not appear in the record. Hartford issued a policy containing commercial property coverage to the Himelfarbs for the year beginning March 20, 1994. An endorsement in May 1994, for which the Himelfarbs paid an additional premium, increased insurance on the contents of the Premises from $700 to $100,700.

Sometime in the spring of 1994 the business of Woodworks failed, and Woodworks was placed in bankruptcy. At about that time counsel for the Himelfarbs inventoried the personal property of Woodworks located on the Premises and at another location at which Woodworks operated, but which is not involved in the instant claim. Counsel's inventory listed twenty-six items or categories including "[assorted] desks, cabinets, chairs" and a "[large assortment] of laminate, wood products, cabinets, worktables." The Himelfarbs placed a month-to-month tenant in the Premises, but that tenant did not pay the rent for September, October, and November of 1994.

On Saturday, November 19, 1994, a person or persons unknown broke into the Premises. The break-in was discovered by the Baltimore City Police. Within a short period of time after learning of the theft, Mrs. Himelfarb, in late 1994 or early 1995, reported the theft to the agent through whom the Himelfarbs had obtained the Hartford policy.[1] At some point the Himelfarbs engaged public adjusters, The Goodman–Gable–Gould Company (GGG), to determine the extent of the loss and to negotiate settlement of their claim.

The bankruptcy trustee's auction sale of the property of Woodworks was held on February 8, 1995. The auctioneer's inventory of machinery and equipment lists 109 items or lots that were sold for the trustee from the Premises and approxi-

---

1. Precisely when Hartford's claims department first received written notice of the claim is not evidenced by any document in the record. When Hartford denied the claim by letter of December 11, 1995, it took the position, *inter alia,* that notice of the loss had not been given until June 5, 1995. Hartford does not undertake in this Court to support summary judgment in its favor on the basis that notice that some loss had occurred was given too late.

mately 300 items or lots that were sold from the other location at which Woodworks operated.

The next relevant event is, in the language of the policy, a request by Hartford to be sent "a signed, sworn proof of loss containing the information [Hartford] request[s] to investigate the claim" within sixty days of the request. Remarkably, that document is not to be found in the record. The record does contain a letter of November 28, 1995, from GGG to Hartford which reads as follows:

> "In compliance with the policy requirement that the Proof of Loss must be filed within 60 days upon request, we are enclosing a Compliance Proof and reserving the right to file an amended Proof of Loss at such time as the loss can be consummated satisfactorily."

The "Compliance Proof" is a printed form headed, "SWORN STATEMENT IN PROOF OF LOSS (For Use With Replacement Cost Coverages)," and containing blanks into which information was typewritten, including the name of the insurer.[2] No schedules identifying stolen property were attached. In both the space for full cost of replacement and in the line for actual cash value was typed "To be determined." By their signatures and their oath before a notary public, the Himelfarbs made the following representations, which were preprinted on the "Compliance Proof":

> "The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said

---

**2.** The record does not affirmatively show whether the proof of loss form is a form that Hartford sent to GGG or whether it is a generic form created by GGG. In her affidavit in support of summary judgment, a claims representative of Hartford does not include the "Compliance Proof" among those Hartford exhibits that she describes as "records of regularly conducted business activity" of Hartford.

company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof."

Counsel for Hartford replied by letter dated November 30, taking the position that the "Compliance Proof" did not comply with the Policy provision requiring " 'a signed, sworn statement of loss **containing the information we request to investigate the claim'** " (emphasis added by counsel). The letter set a deadline of December 4, 1995, and stated that the "proof must include the necessary supporting documentation, including the documents the Hartford has previously requested. . . ." As noted above, that which was previously requested by Hartford is not in the record. GGG replied by letter of December 4 stating that the proof of loss that had been submitted complied "with the 60–day demand period ending December 2, 1995," and that "[a]ll available information requested for the Hartford's investigation has been provided independently of the Proof." Hartford denied the claim on December 11, 1995.

According to the affidavit of a GGG adjuster, filed in opposition to Hartford's motion for summary judgment, GGG needed the auctioneer's list identifying the items sold at the bankruptcy sale so that, by comparing those items with the inventory that had been made by counsel for the Himelfarbs prior to the break-in at the Premises, GGG could determine what had been taken in the break-in. The affiant further stated that, despite numerous telephone calls and letters, GGG had been unable to obtain the information concerning the bankruptcy auction until April 25, 1996. Under cover of a letter dated June 6, 1996, GGG sent Hartford a presentation prepared by GGG which the latter described as "the Inventory and Claim." It lists seven items of equipment and twelve lots of assorted personalty at a replacement cost totaling approximately $7,000, nine computers and one laser printer at a replacement cost totaling $16,751, and some $19,000 in fixtures.[3]

---

3. Listed among the fixtures were 175 fluorescent lights and the alarm system.

Thereafter, the Himelfarbs sued Hartford in the Circuit Court for Baltimore City. Hartford moved for summary judgment which the circuit court granted. On the Himelfarbs' appeal to the Court of Special Appeals, the judgment was reversed. *Himelfarb v. Hartford Fire Ins. Co.*, 123 Md.App. 456, 718 A.2d 693 (1998). That court reasoned that, although the insurer need not show prejudice in order to enforce policy provisions concerning the timely furnishing of a proof of loss, substantial compliance with the provision by the insured is sufficient. Relying on the law's aversion to forfeitures, the Court of Special Appeals held that an insured must have a reasonable opportunity under all of the circumstances to comply with policy provisions requiring a proof of loss. The court reversed the denial of summary judgment on the ground "that the Himelfarbs raised a genuine issue of fact as to whether they produced all information available to them as soon as it reasonably could be obtained and produced." *Id.* at 470, 718 A.2d at 700.

We granted Hartford's petition for certiorari, and we shall affirm the judgment of the Court of Special Appeals.

Hartford's position is that the "Compliance Proof" that was submitted within sixty days of Hartford's request does not satisfy the policy's requirements because it does not furnish the information requested by Hartford, and that the inventory and claim submitted in June of 1996 did not satisfy the policy's requirements because it was not submitted within sixty days following Hartford's request. The short answer to Hartford's contention is that the record does not contain the request by Hartford. As the movant for summary judgment, the burden was on Hartford to show that the Himelfarbs had not complied with the insurer's request, which would include producing the terms of the request before the court. Consequently, the record does not support the grant of summary judgment, even on Hartford's theory of the case.

The policy term with which the Himelfarbs have not complied, as Hartford sees it, is ¶ E.3.a(7), quoted above. Hartford reinforces its contention by citing to ¶ E.4.f of the policy

under which Hartford "will pay for covered loss or damage within 30 days after [Hartford] receive[s] the sworn proof of loss, if . . . [the insureds] have complied with all of the terms of this Coverage Part. . . ." The significance of subparagraph (7), Hartford submits, lies in its sixty day provision. Hartford's position seems to be that the requirement for furnishing the requested information within sixty days from the request is an express condition precedent so that, upon failure of the condition to occur within the time specified, Hartford's obligation to perform its part of the bargain is extinguished.

 Provisions in insurance policies are to be interpreted like those of any other contract. *Collier v. MD–Individual Practice Ass'n*, 327 Md. 1, 5, 607 A.2d 537, 539 (1992); *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985). Looking first to the language of the Policy, Hartford relies on the introduction of Part E in the Personal Property Coverage form, headed, "LOSS CONDITIONS." It introduces seven subparts with this language: "The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions." The seven subparts are: "1. Abandonment," "2. Appraisal," "3. Duties In The Event Of Loss Or Damage," "4. Loss Payment," "5. Recovered Property," "6. Vacancy," and "7. Valuation." In our view Hartford undertakes to read too much into the introduction to Part E. Each provision in Part E is not a condition precedent to Hartford's performance. For example, included in Part E is subpart 4 dealing with loss payments. Paragraph 4.a. provides that Hartford at its option either will pay the value of lost or damaged property or the cost of repair or replacement. Payment by Hartford clearly is not a condition precedent to Hartford's obligation to pay. Similarly in ¶ 4.e. the policy provides that Hartford, at its expense, "may elect to defend [the insured] against suits arising from claims of owners of property." Surely the obligation of Hartford to pay an otherwise proper claim is not extinguished unless a claim is made against the insured by an owner and unless Hartford elects to defend that claim. The use of the term

"conditions" in the introduction to Part E of the policy is ambiguous.

> "The question whether a stipulation in a contract constitutes a condition precedent is one of construction dependent on the intent of the parties to be gathered from the words they have employed and, in case of ambiguity, after resort to the other permissible aids to interpretation. Although no particular form of words is necessary in order to create an express condition, such words and phrases as 'if' and 'provided that,' are commonly used to indicate that performance has been expressly made conditional as have the words 'when,' 'after,' 'as soon as,' or 'subject to.' "

*Chirichella v. Erwin*, 270 Md. 178, 182, 310 A.2d 555, 557 (1973) (citations omitted).

■ Under ordinary rules of construction the use of the term "conditions" in the introduction to Part E must be read compatibly with Part E in its entirety. To do so, "conditions" must be read as "terms" or "provisions," any one of which, in turn, may be either an express condition or may be a covenant. If the latter, the provision makes the obligation of Hartford to perform subject to the implied condition of substantial performance.

■ Directing attention to whether ¶ E.3.a(7) is a condition or a covenant, it is first to be noted that the provision does not contain any of the words ordinarily used to create an express condition. Nor does it expressly effect a forfeiture for failure of the condition. The language of ¶ E.3.a(7) imposes a duty on the insured. Under these circumstances construction of ¶ E.3.a(7) as a covenant, rather than an express condition, is the preferred construction. *See Beckenheimer's Inc. v. Alameda Assocs. Ltd. Partnership*, 327 Md. 536, 554–55, 611 A.2d 105, 113–14 (1992); *New York Bronze Powder Co. v. Benjamin Acquisition Corp.*, 351 Md. 8, 17, 716 A.2d 230, 234 (1998) (applying New York law); Restatement (Second) of Contracts § 227(2) (1981).

In *Beckenheimer's* we quoted comment *d* to Restatement § 227(2) in explanation of the preference:

" '*Condition or duty.* When an obligor wants the obligee to do an act, the obligor may make his own duty conditional on the obligee doing it and may also have the obligee promise to do it. Or he may merely make his own duty conditional on the obligee doing it. Or he may merely have the obligee promise to do it.... It may not be clear, however, which he has done. The rule in Subsection (2) states a preference for an interpretation that merely imposes a duty on the obligee to do the act and does not make the doing of the act a condition of the obligor's duty. The preferred interpretation avoids the harsh results that might otherwise result from the non-occurrence of a condition and still gives adequate protection to the obligor under the rules ... relating to performances to be exchanged under an exchange of promises. Under those rules ... the obligee's failure to perform his duty has, if it is material, the effect of the non-occurrence of a condition of the obligor's duty. Unless the agreement makes it clear that the event is required as a condition, it is fairer to apply these more flexible rules. The obligor will, in any case, have a remedy for breach.' "
327 Md. at 555, 611 A.2d at 114.

An express condition precedent to Hartford's obligation to pay is found in ¶ E.4.f, reading in part: "[Hartford] will pay for covered loss ... after we receive the sworn proof of loss, if ... [the insured has] complied with all of the terms of this Coverage Part." Thus, Hartford is under no obligation to pay until it has received the sworn proof of loss. But, if the Himelfarbs "have complied with all of the terms of" Part E, then Hartford "will pay for covered loss." With respect to the sole issue before us, the effect of the time limit in ¶ E.3.a(7), it suffices that compliance within that time be substantial.

This Court has held that substantial compliance by an insured with policy requirements for the submission of a proof of loss is sufficient. *United States Fire Ins. Co. v. Merrick,* 171 Md. 476, 190 A. 335 (1937). That case involved a fire loss on a home insured under a policy that named both a husband and wife as insureds. Six days before the loss the wife deserted her husband, and her whereabouts were unknown

when the loss was sustained and when the proof of loss was to be filed. Because the fire insurance policy required the proof of loss to be signed by both insureds, the husband signed the proof of loss for himself and on behalf of his wife. Coverage was denied, based in part on the absence of the wife's direct participation in the proof of loss.

In affirming judgment for the insureds, this Court stated several general principles.

"The furnishing of a proof of loss is a preliminary step by the insured in the collection of benefits accruing under an insurance policy; and its chief purpose is to acquaint the insurance company with certain facts and circumstances relative to the loss, forming a basis for further steps to be taken by the company, ranging from full settlement to absolute repudiation of liability. Substantial compliance with the policy requirements for the submission of this proof has been held sufficient. 'Where insured acts in good faith and discloses such information as the insurer requests, the provision of the policy relative to proof of loss should be liberally construed in aid of the indemnity contemplated by the parties.' "

*Id.* at 489, 190 A. at 341 (citation omitted) (quoting *Bingell v. Royal Ins. Co.*, 240 Pa. 412, 87 A. 955 (1913)). The Court was "guided further by the principle that the law does not favor forfeitures." *Id.* at 490, 190 A. at 342. Accordingly, the failure of the wife to sign the proof of loss "constituted no sound basis for its repudiation by the company." *Id.* at 491, 190 A. at 342.

In *Merrick* the husband faced a dilemma somewhat similar to that faced by the Himelfarbs in the instant matter. The husband did not know to what extent his wife had taken personal effects with her when she abandoned the marital abode. Prior to trial the wife had moved to Virginia. She appeared as a witness and described those personal effects which she had taken and which, therefore, were not destroyed in the fire. This resulted in a $545 reduction in the claim under the policy. *Id.* at 483, 190 A. at 338. In essence, the

husband in *Merrick* did what it was reasonably possible for him to do by the deadline for submitting a proof of loss, and the extent of the loss was later refined as additional information became available.

Hartford relies principally on *Government Employees Ins. Co. v. Harvey*, 278 Md. 548, 366 A.2d 13 (1976), a case involving a proof of loss under personal injury protection (PIP) coverage adjunct to an automobile liability policy issued by GEICO. The PIP endorsement required a proof of claim to be submitted as soon as practicable after an automobile accident, and within a period not to exceed six months. The proof of claim was to be submitted on forms furnished by GEICO. Under the PIP endorsement, " '[n]o action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all terms of this amendment.' " *Id.* at 550, 366 A.2d at 15. Three forms were furnished by GEICO: (1) an "Application for Benefits–Economic Loss Protection," which was to be completed by the insured; (2) a "Wage and Salary Verification" form, which was to be completed by the employer; and (3) an "Attending Physician's Report" which was to be completed by the insured's health care provider.

The insured did not file any proof of claim within the six months following the accident. Some six weeks after the period expired the insured presented a proof of claim that was rejected by the insurer, resulting in litigation and the reported decision in *Harvey*. The trial court had found in favor of the insured by applying former Maryland Code (1957, 1972 Repl. Vol.), Article 48A, § 482 (now Md.Code (1997), § 19–110 of the Insurance Article). That statute required, as § 19–110 now does, that an insurer establish actual prejudice in order to disclaim coverage on a liability policy based on the insured's failure to cooperate or to give required notice. We held that this statute was inapplicable "to insurance disclaimers grounded on the insured's failure to submit proof of loss within the time specified in the policy." *Harvey*, 278 Md. at 553, 366 A.2d at 17. Then Article 48A, § 544(a)(1) (now, as amended, § 19–508(a)(2)(i) of the Insurance Article) permitted PIP cov-

erage to prescribe a period of not less than six months after the accident "within which the original proof of loss with respect to a claim for benefits must be presented to the insurer." We held that the legislatively authorized provision in the GEICO policy was a condition precedent with which the insured had failed to comply and that, regardless of the lack of prejudice, there was no obligation on the insurer to pay.[4]

In support of our holding in *Harvey*, we contrasted the Application for Benefits form with the Wage and Salary Verification form and the Attending Physicians Report. We said that "[w]hile the time of completion and mailing of these latter two documents was not within the [insured's] direct control, it is evident from a review of the 'Application for Benefits' form that it was intended to constitute the basic and original proof of claim form required by the policy to be filed within the six-month period after the accident (subject to later supplementation, if necessary)." *Id.* at 554, 366 A.2d at 18. Thus, *Harvey* is distinguishable from the instant matter. There the insured never filed any proof of loss within the applicable period. Here, the insured filed the "Compliance Proof" within sixty days of Hartford's request, and the issue is whether that filing, together with the insureds' express promise of later supplementation, constituted substantial compliance with the sixty day time limit in ¶ E.3.a(7) of the policy.[5] Further, this Court limited its rationale for the forfeiture effected in *Harvey* to that part of the three part proof of claim that was within the insured's control. In the instant matter, the Himelfarbs submit that the "Compliance Proof" furnished all of the information that was available to them at the time a proof of loss was due. In addition, this Court recognized in *Harvey* that a timely filed proof of loss may be supplemented.

---

4. Md.Code (1997), § 19–508(b)(1) of the Insurance Article now requires, under the circumstances set forth therein, that the insurer notify the insured of the latest date on which a claim for PIP benefits may be filed.

5. In the "Compliance Proof," the Himelfarbs promised that "[a]ny other information that may be required will be furnished and considered a part of this proof."

Here, the Himelfarbs contend that they supplemented their proof of loss with reasonable promptness after the information from the bankruptcy trustee's auctioneer was furnished to them.

■ Hartford also relies on Md.Code (1997), § 19–111 of the Insurance Article. That statute reads:

"(a) *Scope of section.*—This section only applies if an insurer, through its agent, adjuster, or representative, has begun investigating, estimating, or adjusting a property loss resulting from fire or a hazard under an extended coverage endorsement.

"(b) *In general.*—(1) Except as provided in paragraph (2) of this subsection, an insured that has failed to give an insurer a sworn statement in proof of loss or a written notice as required by an insurance contract is not prevented from recovering under the insurance contract.

"(2) An insured may be prevented from recovering under an insurance contract if the insured *fails to provide the sworn statement* in proof of loss or written notice *required by the insurance contract* within 15 days after receiving the insurer's written request for the statement or notice."

(Emphasis added). Hartford reads § 19–111 to mean that forfeiture may occur as early as the sixteenth day after a request for a proof of loss and notes that its policy issued to the Himelfarbs allows the insureds four times the minimum period. But, § 19–111(b)(2) applies only if the insured fails to provide a proof of loss required by the policy. Thus, § 19–111(b)(2) supports Hartford in this case only if one assumes that the Himelfarbs failed to provide that which the policy requires. If, on the other hand, the Himelfarbs have substantially complied with ¶ E.3.a(7) of the policy, then § 19–111(b)(2) of the Insurance Article is not operative. The statute, standing alone, casts no light on the issue before us.

Hartford also cites to *Grangers' Mutual Fire Insurance Co. v. Farmers' National Bank,* 164 Md. 441, 165 A. 185 (1933), and to *Leftwich v. Royal Insurance Co. of Liverpool,* 91 Md. 596, 46 A. 1010 (1900). In *Grangers'* the insured never

submitted any information under oath to the insurer as a purported proof of loss. That case was a contest over the surplus in a mortgage foreclosure of realty on which buildings had been destroyed by fire. The fire insurer paid the mortgagee pursuant to a provision in the policy and claimed the surplus as a subrogee of the mortgagee. The rival claimant was a judgment creditor of the mortgagor; the latter testified on behalf of the creditor that the insurer's local agent had promised the mortgagor "to do what was necessary to collect the insurance." *Grangers'*, 164 Md. at 445, 165 A. at 187. "The agent denied in his testimony that he had made any such statement." *Id.* This credibility issue was resolved in favor of the agent, and judgment in favor of the creditor was reversed.

*Leftwich* was decided at a time when, under Maryland practice, a judge conducting a non-jury trial in an action at law instructed himself on the law, and those instructions were subject to appellate review on exceptions. The case holds that the trial court erred in instructing itself to find for the insurer on the ground that the loss, thirty-six hogsheads of tobacco that were destroyed by fire, was not covered by the defendant's policy. In the case now before us Hartford cites *Leftwich* for its approval of another prayer of the defendant, 91 Md. at 612, 46 A. at 1013, which read, in relevant part, as set forth below:

> "[I]f [the court] finds there has been no waiver by the defendant of the filing of *preliminary* proofs of loss within sixty days after the fire, as required by the policy in suit, and that the proofs offered in evidence were not filed until more than sixty days after the said fire, the verdict must be for the defendant."

*Id.* at 601, 46 A. 1010 (emphasis added). It appears from this instruction that nothing had been submitted during the sixty day period. The approval of the requested instruction by this Court indicates, however, that, had a preliminary proof of loss been filed, the analysis would have been different.

The requested instruction in *Leftwich* was approved because it "correctly stated the law upon this subject, as announced by this Court in the case of *McElroy v. Hancock Life Ins. Co.*, 88 Md. [137,] 148[, 41 A. 112, 115 (1898) ]." *Id.* at 612, 46 A. at 1013. In *McElroy* a life insurer denied the claim based upon a statute in its state of domicile requiring proofs of death to be submitted within ninety days after death. The proof of death in *McElroy* was not submitted until more than one year after the insured's death. After reversing judgment in favor of the insurer on other grounds, the Court discussed the timeliness of the notice of death. Some years before his death the insured had assigned ownership of the policy to a relative. The insured's personal representative did not know for almost a year that the insured had died in a hospital out of state. Meanwhile, the assignee/owner of the policy had become insolvent, and a trustee had been appointed to administer the insolvency estate. The trustee in insolvency made claim as soon as he learned the relevant facts from the personal representative. As to the legal effect of these circumstances the Court said:

> " 'A contract should not be so construed as to defeat or render nugatory the rights of one of the parties to it, unless the language employed imperatively requires such construction. In other words an interpretation which gives effect is preferred to one which makes void. Besides a contract should be interpreted in view of the conditions necessarily implied by law.' As we already said, it would be unreasonable to require the plaintiff to have given the defendant notice or proof of facts of which he was ignorant, and which he could not have been reasonably expected to know before the day on which he received the information from [the personal representative]."

*McElroy*, 88 Md. at 149, 41 A. at 115 (quoting *Kentzler v. The Am. Mut. Accident Ass'n*, 88 Wis. 589, 594, 60 N.W. 1002, 1004 (1894)).[6]

---

6. We do not mean to imply from our references to *McElroy* that the proof of loss by theft in a property insurance case is completely analogous to proof of death in a life insurance case.

Complementing the concept of a preliminary proof of loss are the cases recognizing amendments to a proof of loss that originally was timely submitted. In *Empire State Insurance Co. v. Guerriero*, 193 Md. 506, 69 A.2d 259 (1949), we said:

"[B]earing in mind the right of the insurers to a full, frank disclosure of all material facts, it is not every omission from notices and proofs given in due time that will violate that right and deny the insured a recovery under their policy. It is generally true that, if there has been no concealment by the insured, and no resulting disadvantage to the insurers which would give rise to an estoppel, the notices and proofs given do not restrict the claim finally, but may be corrected."

*Id.* at 517, 69 A.2d at 263 (quoting *Automobile Ins. Co. v. Thomas*, 153 Md. 253, 262, 138 A. 33, 37 (1927)). In *Guerriero* the cause of loss was changed from fire to explosion; in *Thomas* the cause of loss was changed from fire to lightning.

A number of our cases have addressed the standard for determining whether an insured has substantially performed the insured's contractual duty to provide a proof of loss. For example, *Mutual Fire Insurance Co. v. Owen*, 148 Md. 257, 129 A. 214 (1925), involved a fire in a store which completely destroyed the building and its contents, including the insured's account books and records. The insurer demanded that the insured furnish duplicate bills for the goods destroyed, as required by a policy provision. *Id.* at 262, 129 A. at 216. The insured had made efforts to comply, but at trial the insurer contended that these efforts were legally insufficient even to present a jury question on compliance. This Court held that the matter was properly submitted to the jury under an instruction "that the plaintiff could not recover unless [the jurors] found that [the plaintiff] furnished duplicate bills for goods purchased by him 'as far as it was possible for him to do so under the circumstances of this case.'" *Id.*

*Mutual Fire Insurance Co. v. Pickett*, 117 Md. 638, 83 A. 1097 (1912), is another case involving the sufficiency of the efforts by an insured storekeeper, who lost his stock of goods

and his business records in a fire, to obtain duplicate evidence of the extent of the loss. A judgment in favor of the storekeeper was reversed because he acknowledged "that he could have gotten some of the bills if he had asked for them, and that he did not try, made no effort and did not think to get others." *Id.* at 643, 83 A. at 1099. In that context the Court said:

> "The object of the condition of the policy in question is to protect the insurer, by requiring the insured to produce the means by which the insurance company can test the accuracy of the proof of loss furnished by him. It does not exact from the insured anything unreasonable or impossible, and until he can show that he has complied with a demand to furnish bills of purchase, or duplicates thereof, or that it was not possible for him to do so by the use of all reasonable means within his power, he can not maintain an action on the policy, unless the insurance company has waived its demand."

*Id.* at 643–44, 83 A. at 1099.

In *Pentz v. Pennsylvania Fire Insurance Co.,* 92 Md. 444, 48 A. 139 (1901), the insured's home was totally destroyed by fire. Within the sixty day time limit set forth in the insurance policy, the insured sent to the insurer, "upon the blank forms furnished by it, sworn preliminary proofs of a total loss without any schedule or inventory in detail of the burned property." *Id.* at 446, 48 A. at 139. An inventory was furnished within the sixty days, but the insurer demanded, *inter alia,* bills for furniture. Judgment in favor of the insurer was reversed based on errors in instructions by the court to itself, sitting non-jury. This Court, however, approved that portion of the challenged instruction "to the effect that the plaintiff was not entitled to recover if the [trier of fact] should find from the evidence that the proofs of loss furnished by her were not such a reasonable compliance with the requirements of the policy as it was within her power to have made." *Id.* at 450, 48 A. at 141. *See also Scottish Union & Nat'l Ins. Co. v. Keene,* 85 Md. 263, 284–85, 37 A. 33, 35–36 (1897) (approving a similar instruction).

The decisions of this Court are consistent with the general principle articulated in J.A. Appleman & J. Appleman, *Insurance Law and Practice* § 3511, at 490 (1970), where the authors state:

> "Strict compliance with a provision limiting the time for furnishing proofs of loss will not be enforced, where such action is not reasonably possible.... Where, without fraud or fault on the part of the insured, the condition becomes impossible of fulfillment, an excuse for failure or delay is shown. For example, if the policy requires a particular inventory of goods after a fire, compliance will be excused if the goods are so damaged that it is not reasonably practicable to make such an inventory."

(Footnotes omitted). *See also Mascaro v. Fireman's Fund Ins. Co.,* 611 F.2d 338 (10th Cir.1979); *Insurance Co. of N. Am. v. University of Alaska,* 669 P.2d 954 (Alaska 1983); *Commercial Standard Ins. Co. v. Cisco Indep. Sch. Dist.,* 435 S.W.2d 565 (Tex.Civ.App.1968).

 Hartford's position in the instant matter is not consistent with the rules established by the cases reviewed above. The furnishing of a complete proof of loss within sixty days after request is not, under the policy in issue, an express condition precedent to Hartford's duty to pay the claim. Rather, the sixty day provision in ¶ E.3.a(7) of the policy is a covenant by the insured, and Hartford is excused from its promise to pay if the insured fails substantially to perform the covenant.[7] Substantial performance by the insured of the covenant as of the specified date may be found if, by that date, two elements are present: (1) the insured has furnished the insurer with information reasonably requested by the insurer to the extent that it is reasonably possible for the insured to do so, and (2) the insured expressly or impliedly promises to

---

7. Another way to conceptualize *the effect* of our holding is to view the provision for submission of a proof of loss within sixty days of request as a condition that does not affect whether Hartford ultimately has an enforceable obligation to pay, upon submission of a complete proof of loss, but that it affects only the time when Hartford's obligation to pay becomes presently enforceable.

submit, when and as it is reasonably possible for the insured to do so, the balance of the information. A preliminary proof of loss that satisfies both of these elements suffices, under the contract before us, to comply with the sixty day provision in ¶ E.3.a(7). The burden is on the insured to prove that both elements have been met. *Pickett,* 117 Md. at 643, 83 A. at 1099. Of course, if the insured satisfies both elements by the sixtieth day, but fails to perform the promise in element two, the insurer ordinarily will not be liable.

In terms of the preceding analysis, Hartford's claimed entitlement to summary judgment brings into play the first element, that is, whether the Himelfarbs included in the "Compliance Proof" all of the required information that it was reasonably possible for them to obtain within sixty days from Hartford's request. Applying the rules of law reviewed above to the facts and inferences therefrom in the light most favorable to the Himelfarbs, we hold, as did the Court of Special Appeals, that a question of fact is presented on that issue. The stolen property was not owned by the Himelfarbs, was not used in their business, and they did not live in the city where the property was located. The stolen property was owned and possessed by Woodworks, which was in bankruptcy. The Himelfarbs did not know what was taken in the break-in. A representative of GGG apparently will testify that GGG could not determine the loss until a comparison was made between the before break-in and after break-in inventories. It cannot be said that the affidavit of the GGG representative shows, as a matter of law, that it was reasonably possible to make the comparison within sixty days of Hartford's request. Thus, when the sixty day period was expiring, the Himelfarbs could submit a sworn proof of loss that contained only so much of the requested and relevant information as it had been reasonably possible for them to obtain, coupled with their promise to furnish the remainder of the information when and as it became reasonably possible for them to do so.

On the present record, the trier of fact could find that the Himelfarbs' failure to submit a complete proof of loss within

sixty days from Hartford's request was not a breach of that time limit in ¶ E.3.a(7) of the policy. Whether the Himelfarbs failed to perform their promise to supplement their preliminary proof of loss when and as it was reasonably possible to do so, and whether that too is a question for the trier of fact, are issues that are not before us.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER, HARTFORD FIRE INSURANCE COMPANY.**